Ronald A. LANDEFELD,
Plaintiff–Appellant,

v.

MARION GENERAL HOSPITAL,
INC., Defendant–Appellee.

No. 92–3634.

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1993.

Decided May 18, 1993.

Cary Rodman Cooper (argued and briefed), Cooper, Straub, Walinski & Cramer, Toledo, OH, C. Michael Piacentino (briefed), Piacentino & Piacentino, Marion, OH, for plaintiff-appellant.

Charles H. Walker, Catherine M. Ballard (argued and briefed), Bricker & Eckler, Columbus, OH, Timothy R. Krugh, Robison, Curphey & O'Connell, Toledo, OH, for defendant-appellee.

Before: KEITH and NELSON, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiff-appellant, Ronald A. Landefeld, M.D., appeals the Order of the United States District Court for the Northern District of Ohio, Western Division, granting summary judgment in favor of defendant, Marion General Hospital ("Hospital"), which resulted in the dismissal of plaintiff's complaint. Plaintiff had originally filed his action pursuant to § 504 of The Rehabilitation Act of 1973, as codified at 29 U.S.C. § 701 et seq. ("the Act"), alleging his medical staff privileges were suspended by the Hospital and he was refused reinstatement solely for reasons of his handicap[1]. Plaintiff also brought various state law causes of action involving breach of contract and tort claims. Defendant filed a Motion For Summary Judgment claiming there were no material facts in dispute and defendant was entitled to judgment in its favor as

a matter of law[2]. The matter was referred to a Magistrate who concluded that because the evidence introduced demonstrated plaintiff's suspension was not due solely to his handicap, defendant was entitled to judgment as a matter of law. Although plaintiff filed objections to the Magistrate's Report and Recommendations, the District Court nevertheless ruled that plaintiff had failed to address the decisive issue on which the Magistrate had ruled, viz., whether plaintiff was suspended from staff privileges solely for reasons due to his handicap. Hence, the district court ruled plaintiff had not made out a prima facie case under the Act and granted defendant's Motion For Summary Judgment. Plaintiff filed a timely Notice of Appeal.

## I.

Landefeld is a board certified internist who worked at the Hospital from October, 1978, until his denial of staff privileges in March, 1988. His suspension resulted from a Hospital investigation of thefts from the internal mailboxes provided by the Hospital for physicians' use. The Hospital, after noting repeated disappearances from the boxes, hired a private investigator who installed hidden video cameras to observe the mailboxes. The video cameras caught plaintiff in the act of going through the mailboxes of other physicians, sometimes stealing or disposing of their mail. The mail in these boxes generally consisted of, among other items, medical reports, laboratory reports, and other patient data. The president of the Hospital, Mr. Mulenthaler, informed the Hospital Chief of Staff who in turn called an emergency meeting of the Medical Staff Executive Committee ("MEC").

On the evening of March 15, 1988, the MEC met and voted to suspend plaintiff effective at noon the following day, pursuant to the Medical Staff Bylaws. Plaintiff responded, under his rights as provided for in

---

1. Plaintiff alleges he suffers from a mental illness which has been diagnosed as a Bipolar Mental Disorder.

2. Defendants put forth four separate theories upon which summary judgment was requested: (1) the claim was barred by the applicable Ohio Statute of Limitations; (2) plaintiff was not "otherwise qualified" to be appointed to the Hospital's medical staff; (3) plaintiff was not denied staff privileges on the basis of his handicap; and (4) plaintiff failed to state a viable state claim.

the bylaws, by requesting a post-suspension hearing. The post-suspension hearing was held before a Hearing Board which consisted of other physicians who were not members of the MEC. Both plaintiff and the MEC were present and represented by counsel. At the conclusion of the post-suspension hearing, the Hearing Board recommended plaintiff be reinstated subject to an extensive list of probationary conditions. It is important to note that according to the Hospital procedures, the duty of the Hearing Board was to formulate a recommendation for the Board of Directors ("the Board"). This recommendation is not binding on the Board. The Board of Directors is composed of various community leaders serving in a voluntary capacity.

Rejecting the Hearing Board's recommendation, the Board, on June 28, 1988, upheld plaintiff's original suspension. The Board of Directors found that the evidence confirmed that plaintiff had tampered with physician mail which related to patient treatment and care, and that it was possible that he would engage in similar action in the future. The Board, however, outlined certain conditions, which if met by defendant, would allow him to be considered for reinstatement. These included submitting monthly detailed progress reports from his treating physician during his suspension, agreeing to a second opinion from a board certified psychiatrist with experience in treating doctors, conclusions from both psychiatrists that plaintiff could resume his practice without jeopardizing either patients or interfering with the medical staff, and a finding by the MEC that plaintiff had not engaged in any harassing or retaliatory acts while in the re-application process. Though defendant re-applied only two weeks later, his application was denied by the MEC[3].

Eventually, almost four months later, plaintiff applied for and received staff privileges at a different hospital, Med Center

Hospital of Marion, Ohio. He has remained there without any incidents since that time.

Neither party to the instant suit disputes that plaintiff's problems have been diagnosed as stemming from a mental illness labeled a Bipolar Mental Disorder. He had been under a psychiatrist's care since shortly before his suspension and continues to be in treatment. Plaintiff's treating psychiatrist, Dr. Harding, testified that plaintiff's conduct was symptomatic of a person suffering from a Bipolar Disorder. Dr. Harding also stated that the illness is treatable.

## II.

Succinctly stated, plaintiff essentially contends that the district court erred by accepting the recommendation of the Magistrate granting defendant's Motion for Summary Judgment. Plaintiff argues that a genuine issue of fact exists regarding whether he was suspended on the basis of his mental illness in violation of § 504 of the Act. Specifically, plaintiff argues that an issue exists as to whether he is "otherwise qualified" to perform his duties and whether the Hospital had made a "reasonable accommodation" for his handicap.

"Otherwise qualified" is a term that has a precise legal meaning which is an element of proving discrimination under the Act. This court has previously addressed the factors required to be proven for a plaintiff to prevail under the Act as follows:

> The elements of a cause of action under section 504 are as follows: (1) the plaintiff is a "handicapped person" under the Act; (2) the plaintiff is "otherwise qualified" for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and, (4) the relevant program or activity is receiving federal financial assistance. *See Push-*

---

**3.** Plaintiff again requested and was given a hearing before the Hearing Committee to review the findings of the MEC. The Hearing Board recommended that plaintiff's suspension continue subject to a modification of certain conditions imposed. Plaintiff again appealed to the Board of Directors for a review. After an oral hearing and a review of the evidence, the Board of Di-

rectors denied plaintiff's re-application for staff privileges. Plaintiff then filed his original action in state court. Soon after, he voluntarily dismissed the state court action and refiled the instant case in federal district court, alleging that he was discriminated against on the basis of his handicap and in contravention of the Act.

kin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1384 (10th Cir.1984); Doe v. New York Univ., 666 F.2d 761, 774–75 (2d Cir.1981). See also Southeastern Community College v. Davis, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979).

Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir.1988).

■■■ Now, turning to the case at bar, this court must review the district court's granting of summary judgment de novo. See Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). When reviewing a grant of summary judgment, this court must confine its analysis to the evidence which was before the district court. Tanks v. Greater Cleveland Regional Transit Auth., 930 F.2d 475, 481 (6th Cir.1991). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court stated:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Anderson, 477 U.S. at 248–9, 106 S.Ct. at 2510–11. Accordingly, the court should view the evidence in a light most favorable to the non-moving party, Id. at 255, 106 S.Ct. at 2513, and determine whether the evidence presents a sufficient disagreement to require submission to a jury. Id. at 251, 255, 106 S.Ct. at 2511, 2513.

■ Key to this appeal, it must be noted that the district court's ruling was based upon its finding that plaintiff had failed to address the Magistrate's finding that plaintiff had not addressed the third element of the Doherty test, to-wit: plaintiff was not suspended solely on the basis of his handicap. Without proof that plaintiff was suspended solely on the basis of his handicap, plaintiff can not make out a prima facie case of handicap discrimination. In support of his conclusion, the Magistrate determined that defendant had put forth non-discriminatory reasons for plaintiff's suspension, viz., plaintiff's pilferage of the mailbox and the resulting lack of trust this generated among plaintiff's peers. Hence, it was plaintiff's burden to demonstrate that the reasons proposed by defendant were pre-textual merely camouflaging its discriminatory basis for the suspension.

In the Magistrate's report, it is noted that plaintiff's contention is that his mental illness caused the behavior which resulted in his dismissal. Plaintiff maintains that the president of the Hospital was out to "get" plaintiff for leaking confidential information to the media[4]. In response to this "provocation," plaintiff's aberrant mailbox behavior resulted. This theory, however, relies on two factors: (1) an inference that Mulenthaler was out to "get" plaintiff; and, (2) plaintiff's behavior was caused by his mental illness.

Nevertheless, regardless of whether plaintiff's theory is correct, a review of the record demonstrates that it was the Board of Directors, and not the president, who suspended plaintiff. Plaintiff has failed to address this issue. There is no showing that the Board had any knowledge of plaintiff's mental illness. The Board was reacting to plaintiff's misconduct which it determined would impair plaintiff's ability to work at the hospital. Even if plaintiff's behavior was caused by his mental illness, the Board had no knowledge of this. Accordingly, there is no evidence at all that the Board acted solely in response to plaintiff's handicap. Hence,

---

4. Apparently, a few years prior to these incidents, the Hospital was in merger discussions with another hospital. The substance of these merger talks was leaked to a local radio station, which led to the merger falling through. President Mulenthaler had suspected plaintiff of leaking the information. In the course of this suit, it was disclosed that plaintiff had, in fact, been the source of the leaks.

plaintiff failed to meet his burden of proving the four elements required under *Doherty*.

Plaintiff failed to introduce any evidence rebutting defendant's evidence, or even raising a genuine issue of material fact, which would suggest his firing was in contravention of the Act. Accordingly, the district court found plaintiff had failed to meet the third prong of *Doherty* and, thus, summary judgment was proper.

Plaintiff further argues that his "mental illness" is a handicap as defined by the Act. It must be noted that, for purposes of defendant's summary judgment motion only, defendant has not contested this point. Plaintiff then proceeds to argue that he is "otherwise qualified" to perform his duties. Defendant, in its brief refutes this. The district court, however, specifically found that:

> [T]he Magistrate specifically held that the plaintiff "was clearly qualified to perform his medical duties as a staff physician: he has been performing those duties at another hospital since shortly after his termination from defendant." This determination, **which the defendant did not object to,** makes any question of reasonable accommodation moot at best. Plaintiff, with or without any accommodation, is able to perform the essential functions of the job.

Joint Appendix, p. 22 (emphasis added).

In other words, the magistrate determined that plaintiff proved he was able to perform the duties of the job, in spite of handicap, because since his suspension, plaintiff has been serving in the same capacity at another hospital without special accommodations. Hence, there is no need for defendant to make any accommodations for plaintiff's handicap.

Plaintiff contends defendant has waived his right to contest this finding since defendant failed to raise any objections to the Magistrate's Report. However, this in and of itself, is not fatal, since defendant was not put on notice that failure to object would result in a waiver. *See Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 508 (6th Cir.1991).

Nevertheless, because plaintiff did not, and could not, meet all four prongs as set out in *Doherty,* defendant was entitled to judgment as a matter of law. Therefore, this court need not determine whether plaintiff was otherwise qualified for the position or whether the hospital could have taken reasonable accommodations.

### III.

■ Plaintiff contends the district court should not have refused to exercise jurisdiction over his pendent state claims. Plaintiff concedes that the granting of jurisdiction was discretionary with the district court, but argues that the dismissal caused him additional delays and increased costs. Hence, plaintiff insists that the district court abused its discretion.

This court has held that "generally, 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Taylor v. First of America Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992), citing, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues. *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir. 1991). This court will review only for an abuse of discretion by the district court. In the case at bar, the district court judge felt there were novel state law questions concerning plaintiff's pendent state law claims. Moreover, he found no overwhelming issues of judicial economy, *See Province v. Cleveland Press Publishing Co.,* 787 F.2d 1047 (6th Cir.1986), which would weigh towards exercising jurisdiction. It cannot be said that the court's conclusions amounted to an abuse of discretion.

### IV.

The Order of the District Court granting Defendant's, Marion General Hospital, Inc., Motion For Summary Judgment is hereby **AFFIRMED.**

DAVID A. NELSON, Circuit Judge, concurring.

As amended in 1988, 29 U.S.C. § 794(a) provides in pertinent part as follows:

"No otherwise qualified individual with handicaps ... shall, *solely* by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." (Emphasis supplied.)

My colleagues on the panel have concluded that as a matter of law, the plaintiff physician cannot be said to have been excluded from defendant hospital's medical staff "solely" by reason of his handicap. I fully agree. I write separately, however, because my reasons for reaching this conclusion differ somewhat from those of the other members of the panel.

The plaintiff contends, as I understand it, that the disruptive covert activities in which he engaged were the product of a mental handicap; that the hospital suspended his medical staff privileges solely by reason of this handicap; that he subsequently began a course of psychiatric treatment in which salts of lithium were administered; that although this course of treatment was successful, the hospital refused to reinstate his staff privileges; and that like the original suspension, the refusal to reinstate the privileges was solely the result of the mental handicap.

Turning first to the initial act of the hospital in suspending the plaintiff's staff privileges, it is clear that the suspension was a direct result of the hospital's discovery that it was the plaintiff who had been removing medical correspondence and other material from the boxes of other doctors at the hospital. There is no dispute about this. Whether the hospital knew or had reason to know that the plaintiff's conduct was attributable to mental illness is immaterial, in my view; no hospital could be expected to tolerate the theft of correspondence addressed to physicians on its staff. The plaintiff was clearly suspended because of his intolerable conduct, and not solely because of his mental condition.

The plaintiff argues, however, that there is a material issue of fact as to whether the hospital acted legally in refusing to reinstate him after he started taking lithium to control his mental disorder. I do not find the argument persuasive.

The stated reasons for the adverse decision on reinstatement are set forth in an 11 page single-spaced typewritten report of the medical staff executive committee dated March 7, 1989. The reasons given in the report were "manifold," as the magistrate subsequently observed; they "included the plaintiff's history of vindictive acts, which had continued to occur after his suspension, his lack of honesty with regard to his misconduct, not only in the past, but with regard to more recent events, problems with monitoring future conduct, concerns about possible unresponsiveness to treatment, and the impact from the plaintiff's conduct on his professional relationships." Report and Recommendation of Magistrate James G. Carr, entered April 13, 1992, at page 17.

Insofar as the plaintiff's responsiveness to treatment is concerned, the report of the medical staff executive committee notes that Dr. Resnick, a psychiatric consultant to the committee, did not believe that the plaintiff was suffering from the sort of "affective" disorder that could be controlled by lithium. This psychiatrist was further of the view that even if the plaintiff had such a disorder, his covert harassment activities were unrelated to it. In this connection it was noted that as recently as October of 1988, at a time when the plaintiff was taking lithium and was undergoing psychiatric care, the plaintiff had put super glue in the locks at the home of a woman who had had the locks changed after the termination of a romantic relationship with the plaintiff.

The report of the medical staff executive committee concluded its analysis of the plaintiff's history of vindictive acts with this paragraph:

"It appears that these vindictive acts are a consequence of Dr. Landefeld's personality disorder that may or may not be complicated by an affective disorder. Although there is disagreement between the psychiatrists as to the nature of the affec-

tive disorder, Dr. Resnick in his oral and written communications with the Committee has indicated that there is a strong likelihood that the type of vindictive acts in which Dr. Landefeld has engaged in the past will continue to occur. This is especially true since the most recent incident occurred while Dr. Landefeld was on Lithium and undergoing psychiatric care. Dr. Harding believes that this is less likely, but even he acknowledges that there is no guarantee that there will not be a reoccurrence of this type of activities. The Committee is of the opinion that Dr. Landefeld's history of this type of covert harassment activities, including the activities that have occurred while he has been under psychiatric care, indicates that there is a strong likelihood that he will continue to engage in this type of activity in the future. This type of activity is inconsistent with and detrimental to the professional relationships within the medical staff."

After discussing in detail a perceived lack of honesty in the plaintiff's professional relationships, the committee expressed itself as follows:

"The Committee believes that Dr. Landefeld has demonstrated both before and after psychiatric treatment that he continues to be dishonest in his dealings with others. This obviously creates a problem with respect to any future covert harassment activities, and may have been and could continue to be a problem on questions such as quality of care review. Dr. Landefeld's lack of honesty is, therefore, a matter of considerable concern."

The report went on to discuss the surveillance problems that would be posed if the plaintiff were returned to the staff; the impracticability of monitoring the plaintiff's psychiatric progress; the poor prospects for effecting major change in the narcissistic personality disorder from which Dr. Resnick believed the plaintiff suffered; and problems created by the plaintiff's troubled professional relationships. As to the latter, the report made these observations:

"It is fundamental to the medical staff relationships that there be trust among professionals and the professionals be able to deal with one another in an appropriate manner. Both Dr. Harding and Dr. Resnick recognized the importance of this element. Dr. Landefeld's consistent and continuing inappropriate behavior, coupled with his dishonesty when confronted with this behavior, reflects an attitude that is inconsistent with the trust relationship that must exist."

There is much more in the report, but the reasons described above amply justify the recommendation that the plaintiff's reapplication for membership on the staff be denied. That recommendation was adopted by a unanimous vote of the hospital's board of directors. Neither Magistrate Carr nor Judge Potter, the district judge to whom Magistrate Carr's recommendations were addressed, could find any probative evidence that the hospital's announced reasons for refusing reinstatement amounted to a pretext for denying the benefits of staff membership on an illegal basis. My independent review of the record has likewise failed to disclose any reason for withholding summary judgment in this case; I therefore concur in the affirmance of the district court's order.