**Richard B. ROTHMAN, Plaintiff,**

v.

**EMORY UNIVERSITY, Defendant.**

No. 93 C 1240.

United States District Court,
N.D. Illinois, E.D.

June 29, 1993.

Richard R. Rothman, pro se.

Algimantas P. Kezelis, Robert A. Kezelis, French, Kezelis & Kominiarek, P.C., Chicago, IL, for defendant Emory University.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Richard Rothman (Rothman) has filed a twelve-count complaint against defendant Emory University (Emory), from whose law school he graduated in 1992. Rothman suffers from a disabling seizure disorder commonly known as epilepsy, and the bulk of his complaint concerns charges that Emory discriminated against him on the basis of that disability. Emory now moves to dismiss the complaint and to transfer the case to the United States District Court for the Northern District of Georgia. Emory's motion to dismiss is granted in part and denied in part. Its motion to transfer the case is denied.

## BACKGROUND

The court assumes the truth of the facts alleged in Rothman's complaint. Rothman is thirty years old and has suffered from a seizure disorder for twenty years. He has been under the care of a neurologist since 1973 and has taken anticonvulsant medications since 1974. Despite his disability, Rothman has attained a good deal of academic success, earning a B.A. from Columbia University in 1984 and an M.A. from the University of Chicago in 1987. In 1989 he entered the Emory University School of Law (the law school) in Atlanta, Georgia.

During his first semester at Emory, the dean of students at the law school, Susan Stockwell, repeatedly summoned Rothman to her office. During their discussions she often told him that he looked unhappy and urged him to seek psychological counseling. Rothman replied that he thought her involvement in his affairs was counterproductive. According to Rothman, Stockwell's "arbitrary and capricious intermeddling interfered with plaintiff's coursework during Fall, 1989." After Rothman received a failing grade in a course on civil procedure and "mediocre" grades in other courses, Stockwell urged him to drop out of law school. Plaintiff believes that Stockwell urged other disabled students to drop out as well.

In January 1990 Rothman met with Stockwell and law school dean Howard Hunter (Hunter) to discuss his failing grade. Stockwell and Hunter decided to put off a determination of whether Rothman would have to repeat the civil procedure course he failed. They told him that the ultimate decision would depend on his second semester performance in a second course on civil procedure. Plaintiff protested that their refusal to decide the issue promptly would hinder him during the second semester.

One of Rothman's courses during the second semester was taught by Frank Alexander (Alexander). Rothman came to Alexander's class unprepared on several occasions and, as a result, Alexander threatened to remove him from the class. Rothman attributed his deficient preparation in Alexander's

course to the "extra effort" he was expected to put into his civil procedure course.

At the end of his second semester Rothman asked that he be given additional time to take his exams. He explained that additional time was necessary because of his disability and he provided a note from a neurologist to document his condition. Rothman requested that he be given an extra hour, and three of his professors acceded to his request. Alexander gave him only an extra half hour, however, and, unlike the other professors, he insisted that Rothman complete his entire exam in the same room as the other students. Rothman protested to Stockwell that Alexander's "partial accommodation" was insufficient and discriminatory. Rothman started Alexander's exam at the same time as the other students. During his extra half hour, as the others filed out of the room, he heard several classmates complain about the special treatment he was receiving. He had difficulty concentrating during his extra half hour because Alexander and several students lingered in the examination room to chat, and because Alexander also allowed some second-year students to use the room for a group study session while Rothman was still taking his exam. Alexander ultimately gave Rothman the lowest non-probationary grade that the law school allows, and the law school denied Rothman's request that the grade be removed from his transcript.

Rothman's discussions with Stockwell concerning the law school's response to his disability continued into the summer of 1990. During one conversation, Stockwell informed Rothman that he would receive no further accommodations in examination procedure unless he provided the school with updated medical reports. In August 1990 Rothman passed Hunter in a law school hallway and Hunter glowered at Rothman for about fifteen seconds. As a consequence of this "intimidation" from Stockwell and Hunter, as well as his humiliation during his examination for Professor Alexander's class, Rothman did not ask for any accommodations for his disability during his second year of law school.

During the spring of Rothman's second year, approximately twelve women filed complaints charging sexual harassment by a former professor at the school. Stockwell recommended to several of the women that they seek psychological counseling. Rothman wrote a letter to Hunter, which he also submitted for publication to Emory's student newspaper, criticizing the school's handling of the sexual harassment accusations.

Rothman had several more minor scrapes with Hunter and Stockwell before he graduated, most concerning a confidential memorandum Hunter wrote to Stockwell suggesting that Rothman be required to seek psychological help. Rothman received his J.D. degree on May 11, 1992. On June 16, 1992, Hunter submitted a school certification concerning Rothman's bar application to the Illinois Board of Law Examiners. Attached to the certification was a letter from Hunter, marked "confidential," which stated that Rothman was openly hostile to students and faculty, that he had received counseling from Stockwell concerning his hostility, and that he attributed all of his difficulties to his "chronic epilepsy." As a result of the letter the Illinois Board of Law Examiners called Rothman in for an interview, during which Rothman and a committee representative discussed Hunter's allegations. The committee representative informed Rothman that nothing in the letter rendered him unfit to practice law, and plaintiff was admitted to the bar. Rothman took his oath as an attorney on November 5, 1992.

Because plaintiff has advanced twelve separate claims why defendant should be liable to him for impeding his attaining the status he now has, the briefing on the legal issues within the restrictions of the local rules has been just that—brief. We think that many of plaintiff's claims are wide of the mark. As to some, however, we are not persuaded, from the abbreviated arguments presented, that plaintiff has no chance to prevail under any set of facts. Perhaps, with respect to some of them at least, we can be so persuaded after further consideration. For now, though, we rule as hereafter set forth.

## DISCUSSION

### Americans with Disabilities Act Claim (Claim I)

■ The Americans with Disabilities Act (ADA) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The ADA defines discrimination to include

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, privileges, advantages, or accommodations.

§ 12182(b)(2)(A)(ii). Private law schools are considered places of public accommodation under the statute. § 12181(7)(J).

■ The ADA was enacted on July 26, 1990, after Rothman's first year of law school. The section of the Act under which Rothman sues, § 12182, became effective eighteen months later, on January 26, 1992. P.L. 101-336 § 310. Except for Hunter's sending of a critical letter about Rothman to the Illinois Board of Law Examiners on June 16, 1992, none of the law school's allegedly illegal acts occurred while the ADA was in force. Accordingly, the court agrees with Emory that the portions of Rothman's ADA claim concerning his treatment while he was enrolled at Emory must be dismissed.

■ The court does not agree with Emory, however, insofar as it suggests that a letter by a professional school's dean to a state licensing board can never form the basis of a valid claim under the ADA. Law schools like Emory are expected to recommend—and do recommend—virtually all of their graduates for membership to the bars of various states. Those recommendations are "services" and "privileges" that virtually all law students expect to receive. A law school's refusal to certify a student's bar application will probably prevent that student from practicing law. If, as Rothman alleges, Hunter gave him a bad, or qualified, recom-

mendation purely because of Rothman's disability, or in retaliation for Rothman's complaints about the law school's allegedly discriminatory policies, then Hunter's action would be violative of the ADA. Rothman's injury was relatively minor—after all, he passed the bar, so the only concrete harm he suffered was his having to go through an interview process beyond that required of most applicants to the Illinois bar—but it was not so small as to justify dismissing the remainder of his claim. Accordingly, the court will allow Rothman to proceed on the portion of his ADA claim relating to the school's correspondence with the Illinois Board of Law Examiners.

### Rehabilitation Act Claims (Claims II, III and VI)

The ADA was not the first federal law to prohibit discrimination against persons with disabilities. Even before the ADA's enactment, Emory was subject to the Rehabilitation Act, 29 U.S.C. § 794, which provided:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.....

Section 794a provided that remedies available under Titles VI and VII, 42 U.S.C. § 2000d *et seq.*, and § 2000e *et seq.*, be available to redress complaints brought under the Rehabilitation Act. Emory was subject to the Rehabilitation Act throughout Rothman's law school career.

■ Rothman makes two allegations that, if true, would support disparate treatment claims under the Rehabilitation Act. The first is his charge concerning the dean's letter to the Illinois Board of Law Examiners. The second is his charge concerning Stockwell's unsolicited conversations with him concerning his disability. Rothman asserts that her persistent "intermeddling" bothered him to such a degree that his coursework suffered. That, in essence, is a hostile environment claim of the sort recog-

nized in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To be sure, Rothman's idea of what constitutes a hostile environment may well differ markedly from that of most reasonable people, whether or not disabled, but the merits of a claim cannot be resolved on a motion to dismiss. Rothman also alleges, in addition to his disparate treatment claims, that Emory officials harassed him in retaliation for complaining about those perceived violations. Retaliation claims are cognizable under the Act. *Hoyt v. St. Mary's Rehabilitation Center*, 711 F.2d 864, 867 (8th Cir. 1983).

The rest of Rothman's Rehabilitation Act allegations amount to a disparate impact claim concerning the law school's procedures for administering examinations. Although the Rehabilitation Act does not compel educational institutions to make substantial or fundamental modifications in their programs to allow disabled persons to participate, *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979), it does encompass some disparate impact claims. As the Court observed in *Southeastern Community College*, there are some circumstances under which a "refusal to modify an existing program might become unreasonable and discriminatory." *Id.* at 413, 99 S.Ct. at 2370. A law school's failure to alter its procedures for administering examinations to accommodate Rothman's disability may support a claim under the Rehabilitation Act if the plaintiff can prove that the modifications were required to accommodate his disability and would not be substantial or fundamental. Accordingly, Rothman may proceed, for now, with all of his Rehabilitation Act claims.

### Family Educational Rights and Privacy Act Claim (Claim IV)

Under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, Emory may not receive federal funds if it prevents its students from inspecting files that contain information directly concerning them. Rothman has sued under FERPA, alleging that the school refuses to show him a number of documents that he is entitled to see. Defendant suggests that some of the documents are not covered by FERPA, but the court need not resolve that point. Only the Secretary of Education is empowered to enforce FERPA's provisions. § 1232g(f). In enacting FERPA, Congress did not create a private cause of action. *Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir.1989), *cert. den.* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 940 (1990); *Fay v. South Colonie Central School Dist.*, 802 F.2d 21, 33 (2nd Cir.1986). Therefore, plaintiff's fourth claim must be dismissed.

### Title VII Claim (Claim V)

Defendant argues that plaintiff's retaliation claim concerning his public statements about gender discrimination at Emory is not cognizable under Title VII, 42 U.S.C. § 2000e *et seq.*, and plaintiff concedes the point. The fifth claim is therefore dismissed. Plaintiff also asks that he be given leave to amend his complaint to convert the retaliation claim into a First Amendment claim. Because Emory has not yet filed a responsive pleading, Rothman may amend his complaint as a matter of course. *See* Fed. R.Civ.P. 15(a). However, the court would question the wisdom of bringing a First Amendment claim against a private university.

### Section 1983 Claim (Claim VII)

Rothman alleges that Emory violated § 1983 by discriminating against him on the basis of disability and by retaliating against him for complaining. Rothman notes that Emory was acting in compliance with certain laws and court rules, but he does not allege that Emory ever acted in any governmental capacity or in conjunction with any governmental agency. Because § 1983's state action requirement is not met, claim VII must be dismissed.

### Section 1985 Claim (Claim VIII)

Rothman also alleges that Stockwell, Hunter, and others at Emory conspired against him in violation of § 1985. As Emory points out, the rule in this circuit, established in *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972), is that decisions

reached collectively by agents of a corporation cannot constitute conspiracies under § 1985. *See also Cromley v. Board of Education of Lockport Township High School Dist. 205,* 699 F.Supp. 1283 (N.D.Ill.1988). A university cannot conspire with itself, and there is no allegation in the complaint that officials of the Illinois Board of Law Examiners—or anyone else—joined Emory in any part of its allegedly discriminatory scheme. Claim VIII also must be dismissed.

### Libel and Invasion of Privacy Claims (Claims IX, X, XI and XII)

■ Rothman's state law libel and invasion of privacy claims are based on Emory's correspondence with the Illinois Board of Law Examiners. Because the Board is a quasi-judicial body, those communications were absolutely privileged under Illinois law. *Kalish v. Illinois Education Ass'n,* 157 Ill. App.3d 969, 110 Ill.Dec. 72, 76–77, 510 N.E.2d 1103, 1107–08 (1987); *app. den.* 116 Ill.2d 559, 113 Ill.Dec. 300, 515 N.E.2d 109 (1987). Claims IX, X, XI and XII are therefore dismissed as well.

### Negligent Supervision Claim (Claim XIII)

■ Claim XIII charges Emory with negligent failure to prevent Stockwell and Hunter from committing the acts that form the basis of the other state law claims. In essence, claim XIII asserts nothing more than the proposition that Emory's liability on the state law claims may be imputed from the actions of its employees. Because the other state law claims have been dismissed, claim XIII must be dismissed as well.

### Motion to Transfer Venue

■ Emory moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Northern District of Georgia in Atlanta, where Emory is located. The court recognizes that the Emory officials implicated in this case live and work in Georgia, but it also takes note of the fact that other witnesses who may be called, including Rothman, live in Illinois. Rothman alleges that his medical condition would make transfer of the case to Georgia particularly burdensome. Because the complaint

has now been whittled down to cover only a few claims involving only a few people, the court does not believe that keeping the case here would be especially inconvenient for Emory. Since plaintiff's choice of forum generally is accorded deference, *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.,* 592 F.2d 364, 368 (7th Cir.1979), *cert. den.,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979), Emory's motion to transfer venue is denied.

### CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part. Claims IV, V, VII, VIII, IX, X, XI, XII and XIII are dismissed in their entirety and claim I is dismissed in part. Plaintiff may proceed for now with all of claims II, III and VI. Defendant's motion to transfer venue is denied.