**William Thomas SPELLS, Jr., Plaintiff,**

v.

**CUYAHOGA COMMUNITY COLLEGE, Defendant.**

**No. 1:93CV0824.**

United States District Court, N.D. Ohio, Eastern Division.

June 21, 1994.

William Thomas Spells, Jr., Cleveland, OH, pro se.

Wally M. Mueller, Gaines & Stern, Cleveland, OH, for defendant Cuyahoga Community College.

## MEMORANDUM AND OPINION

STREEPY, United States Magistrate Judge.

Plaintiff brings this action pursuant to the Rehabilitation Act, 29 U.S.C. § 794, which provides "[n]o otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." Plaintiff contends he was subject to a hostile work environment and terminated because of his handicap. Now pending is defendant's motion for summary judgment.

Plaintiff was employed as a part-time instructional aide in the Jobs Program at Cuyahoga Community College (CCC) from February 1991 to February 1992. Affidavit of Gloria Mobley (defendant's exhibit (DX) 1), ¶¶ 6–10; plaintiff dep. at 57. When plaintiff started working, his supervisor was Angela Lee. Plaintiff experienced problems with Lee, to wit, he felt she exhibited a negative attitude to plaintiff and "attacked [his] professional ability." Lee was also having problems with other employees. Plaintiff complained to Lee's supervisor, Raymond Manak. Lee "lightened up" and shortly thereafter was transferred to another office. Gloria Mobley then became plaintiff's supervisor. Plaintiff dep. at 71–73, 132–34.

Plaintiff also experienced problems with a coworker, Gwendolyn Harper, throughout his employment. On March 15, 1991, she called him "Hop Along" when they were both in the stock room. Plaintiff dep. at 120–22. On March 27, 1991, she called him a "cripple" during lunch. Plaintiff dep. at 122. Plaintiff complained to Mobley and describes her response thus:

A  * * * * *

Gloria said that there was no place for attitudes like that, and she informed me that she was going to talk to Gwen, and she said that she was going to address the issue. She was going to make sure it stopped, but before she said that she was going to do something about it, she said: well, maybe Gwen is just poking fun at you.... She said she was going to talk to Gwen. Then, she informed me that she had talked to Gwen.

Q  When did she tell you that she had talked to Gwen?

A  The same day.

Q  Okay. So she came back the same day and said: I talked to Gwen?

A  Uh-huh.

Q  Okay. What did she tell you about the conversation that she had with Gwen?

A  She said that she had addressed the issues, and Gwen had explained to her that she didn't mean any harm, that she was just poking fun, that it was not going to happen again, and she considered the issue to be closed, and she hoped that it would not strain my working relationship with Mrs. Harper.

Q  At that point, were you satisfied with what Mrs. Mobley had done?

A  No.

Q  Okay. What about it were you dissatisfied with?

A  I was not satisfied with the way that she handled it.

Q  Okay. What should she have done differently at that point?

*  *  *  *  *  *

A  I think that she should have confronted Gwen and myself together, and I think that she should have put it in writing that the slander of my character would no longer be tolerated, and if so, it was—it would be grounds for termination of her position or some type of reprimand.

Plaintiff dep. at 126–29.

Plaintiff testified Harper continued making improper comments. On April 17, 1991, she said to her class, "It sounds like Hop–Along coming down the hall." Plaintiff dep. at 123. When he spoke to Harper about this comment the next day, she said she didn't know she offended him and was only poking fun. Plaintiff dep. at 124. Harper subsequently made similar comments, which continued until he left CCC. See plaintiff dep. at 130–32. There is no evidence that plaintiff subsequently complained to a supervisor regarding Harper's comments except for the one complaint to Mobley, above noted.

Plaintiff also experienced problems with Mobley. He contends she was unfair to him, made him perform duties outside his job description, did not adequately train him, and criticized his work performance in front of peers and students. See plaintiff dep. at 75–78, 134–40. Mobley never made any discrim-

inatory comments against plaintiff. See plaintiff dep. at 109.

CCC had a policy of limiting part-time employees to 1,040 hours worked per fiscal year, which runs from July 1 to June 30. DX 1, ¶ 7. Prior to 1992 part-time employees were often allowed to exceed the 1,040 hour limit. *Id.* CCC began to monitor the use of part-time employees in 1992, and began enforcing the 1,040 hour limit. *Id.,* ¶ 10. On February 7, 1992, Dr. Lawrence Simpson called Mobley and advised her that some part-time employees were in jeopardy because of the 1,040 hour limit and that Spells in particular had already worked 1,200 hours. *Id.,* ¶ 8. Mobley met with her supervisor, Manak, and Simpson, and they determined Spells would be laid off because he had exceeded the 1,040 hour limit. *Id.,* ¶ 10; affidavit of Raymond Manak (DX 3), ¶ 3. Mobley and Manak met with Spells, giving him a memo advising him he was laid off because he had exceeded 1,040 hours, and would receive two weeks of severance pay. DX 1, ¶ 11; attachment 1 thereto; plaintiff dep. at 116.

Two other part-time employees, non-disabled, who had exceeded 1,040 hours, Gwendolyn Woods and Toni Walker, were laid off in February 1992. DX 1, ¶ 13; DX 3, ¶ 5.

In addition, the U.S. Department of Education, Office for Civil Rights, investigated plaintiff's complaints and concluded the evidence did not support his allegation (DX 5).

■■■■ Summary judgment is appropriate where the entire record "shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273 (6th Cir.1974). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), holds that:

> ... Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

The Sixth Circuit in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street,* at 1479–80, sets forth ten "new era" principles:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respon-

dent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

### A. Hostile Environment

A fair reading of plaintiff's complaint, briefs, and deposition indicates that he is alleging discrimination based on a hostile work environment.[1] This type of claim, well established under Title VII, *see Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), has been recognized under the Rehabilitation Act. *See Pendleton v. Jefferson Local School District Board of Education,*[2] No. 91–3126, 1992 WL 57421 (6th Cir. Mar. 25, 1992), at *5–6 ("this circuit and several others have applied Title VII theories in deciding § 794 cases");

*Rothman v. Emory University,* 828 F.Supp. 537, 541–42 (N.D.Ill.1993).

■ A plaintiff must satisfy "two requisite elements for a ... hostile work environment claim: 'repeated slurs and management's tolerance and condonation of the situation.'" *Davis v. Monsanto Chemical Co.,* 858 F.2d 345, 349 (6th Cir.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989), quoting *Erebia v. Chrysler Plastic Products Corp.,* 772 F.2d 1250 (6th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

■ As to the first element, "the plaintiff must show that the alleged harassment constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to perform the tasks required by the employer." *Davis,* 858 F.2d at 349. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Although psychological injury is relevant to whether plaintiff found the environment abusive, it is not a required element of a cause of action. *Id.* There is sufficient evidence of the first element to withstand summary judgment.

■ As to the second element, in order to show that the employer tolerated or condoned the situation, plaintiff must show that the employer knew or reasonably should have known of the alleged conduct, and failed to take prompt and remedial action. An employer who has taken reasonable steps to correct and/or prevent the harassment is not liable. *Davis,* 858 F.2d at 349. Remedial action by the employer must be reasonably

---

1. It appears plaintiff sufficiently raised this issue before the U.S. Department of Education, Office for Civil Rights (DOE). See DOE determination letter dated February 9, 1993, DX 5 at 6, 8.

2. While unpublished cases are disfavored, Sixth Circuit Rule 24(c) rule permits the use thereof where "an unpublished disposition has precedential value in relation to a material issue in a case...." *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir.1987).

calculated to end the harassment for the employer to avoid liability. "Plainly, an appropriate corrective response will vary according to the frequency and severity of the alleged harassment." *Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 224 (6th Cir. 1991). Summary judgment is appropriate if the employer's response does not raise a genuine issue of whether the response was appropriate. *See Davis*, 858 F.2d at 349–50; *Bell*, 929 F.2d at 225.

■ Both times plaintiff complained to supervisors, corrective measures were taken. Lee was transferred to another department, and plaintiff was given a new supervisor. Mobley spoke to Harper about her discriminatory comments, and was assured they would not be repeated. Mobley's action was an appropriate response (despite plaintiff's contrary opinion) to a first-time complaint.

Although Harper's discriminatory comments did not in fact stop, there is no evidence plaintiff made Mobley aware of this fact. Thus, there is no material evidence that management condoned or ratified the discriminatory comments of Harper, and plaintiff cannot prevail on a hostile environment claim.

### B. Discriminatory Discharge

■ There are four elements in establishing discrimination under the Act: (1) plaintiff is a "handicapped" person under the Act; (2) plaintiff is "otherwise qualified" for participation in the program; (3) plaintiff is excluded from participation in, being denied benefits of, or being subjected to discrimination under the program solely by reason of his or her handicap; and (4) the program is receiving federal financial assistance. *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1180 (6th Cir.1993).

■ To establish a prima facie case of wrongful termination under the Rehabilitation Act, plaintiff must demonstrate (1) he is an "otherwise qualified handicapped individual" under the Act, and (2) he was terminated because of his handicap. *Pendleton, supra*, at *4, citing *Reynolds v. Brock*, 815 F.2d 571 (9th Cir.1987). Without proof that the adverse action was taken solely on the basis of his handicap, plaintiff cannot establish a *prima facie* case of discrimination. *Landefeld*, 994 F.2d at 1181.

■ If plaintiff can establish a *prima facie* case of wrongful termination, the burden shifts to defendant to demonstrate a legitimate nondiscriminatory reason for the termination. *Pendleton, supra*, at *4. Defendant has proffered such a reason, to wit, plaintiff exceeded the permitted number of hours for part-time employees within a fiscal year, and other non-disabled part-time employees were laid off for the same reason.

■ Where the defendant puts forth a legitimate non-discriminatory reason for the adverse action, plaintiff must demonstrate the proffered reason was pretext for discrimination. *Landefeld*, 994 F.2d at 1181. Plaintiff has offered no such evidence. Plaintiff's contention he was subject to discriminatory comments from fellow employees, see Spells dep. at 107–09, 114, does not establish pretext because the comments were not made by any decision maker. *See Landefeld*, 994 F.2d at 1181 (plaintiff's inference that the hospital president was out to "get" plaintiff was irrelevant because board of directors, not president, suspended plaintiff). Plaintiff cannot prevail on a discriminatory discharge claim.

Summary judgment shall be entered in favor of defendant.

IT IS SO ORDERED.