95 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Herman HOLMES, Plaintiff-Appellee,
v.
William J. PERRY, Secretary of Defense Defendant-Appellant.
 No. 94-6106.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1996.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 92-02274; Robert M. McRae Jr., Judge.
 W.D.Tenn.
 REVERSED.
 Before: CONTIE, NELSON, and BATCHELDER, Circuit Judges
 PER CURIAM.
 
 
 1
 Defendant Secretary of Defense William J. Perry appeals from a bench-trial verdict in favor of plaintiff Herman Holmes in this case arising out of Holmes's discharge from the Department of Defense's Defense Depot Memphis, Tennessee ("DDMT"). For reasons explained below, we REVERSE.
 
 I.
 
 2
 On May 26, 1988, Holmes applied for employment as a materials handler at the DDMT. In connection with this application, Holmes filled out a Standard Form-171 ("the employment application form" or "the application form") for federal employment, which he signed on July 20, 1988. On May 22, 1989, he began employment at the DDMT.
 
 
 3
 One of the questions contained on the application form inquires whether: "During the last ten years have you forfeited collateral, been convicted, been in prison, been on probation, or been on parole?"[1] Holmes answered this question by stating that he "had to appear in court (misdemeanor) for insufficient funds for check I had written Memphis, TN city court."
 
 
 4
 In December 1990, well after Holmes began to work at the DDMT, the Office of Personnel Management undertook a routine background investigation which revealed that Holmes had omitted at least four convictions from the application form.[2] In light of this information, the DDMT issued Holmes a Notice of Proposed Removal on April 5, 1991, for having falsified the application form. The April 5th notice provided that Holmes's employment would end on July 5, 1991.
 
 
 5
 At all times relevant to these proceedings, the Director of Civilian Personnel, Ernest L. Lloyd, had final authority within the agency to determine whether an application was falsified intentionally or mistakenly. After the Notice of Proposed Removal was issued, Lloyd notified Holmes that he could respond to the Notice in writing and that an interview would take place at which time Lloyd would make a determination whether Holmes falsified his application intentionally or mistakenly.
 
 
 6
 In late April 1991, Holmes wrote a response to the Notice, implying that his failure to include his prior convictions on the application form was not intentional. During a subsequent interview with Lloyd, Holmes explained that he failed to include his prior convictions because he was in a hurry when filling out the application form. Because there was no evidence that Holmes had, in fact, been in a hurry when completing the application form, and in light of the sheer number of Holmes's priors, Lloyd concluded that the omission was intentional.
 
 
 7
 A Merit Systems Protection Board ("MSPB") judge held a hearing into the matter, and sustained Lloyd's decision on behalf of the DDMT. The MSPB judge found that a preponderance of the evidence supported the agency's charge that Holmes intentionally omitted the prior convictions and had, therefore, falsified the application form.[3] Although Holmes attempted to assail his discharge in the administrative appeal to the MSPB on the grounds of disability discrimination because of his alcoholism, the administrative judge rebuffed Holmes's position on the ground that, on the evidence before him, Holmes had failed to establish that he was an alcoholic.[4] The administrative judge went on to find, however, that even if Holmes suffered from alcoholism, he had failed to demonstrate by a preponderance of the evidence that he was discharged solely because of his handicap. Specifically, the administrative judge found the evidence of a causal connection between Holmes's discharge and his handicap insufficient to support Holmes's employment discrimination claim. The full MSPB denied Holmes's petition for review, adopting the administrative judge's initial decision as its own.
 
 
 8
 Holmes then filed suit in federal district court, arguing his dismissal constituted a violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. This time, Holmes's contention was that he had omitted the information regarding his prior convictions because of his alcoholism. As Holmes's complaint somewhat incoherently explained:
 
 
 9
 [Plaintiff's] state of mind and ... handicapping condition did not lend itself to clarity and a precise recall of events which if taken off the Police record which was obtained by subsequent investigation after some length employment by the plaintiff will clearly denote [his] alcoholism ... DWI, disorderly conduct, [and] public drunkenness.
 
 
 10
 Apparently, Holmes's theory was that his alcoholism was responsible both for his prior convictions and his failure to mention them on the employment application.
 
 
 11
 During the bench trial in this case, Holmes testified that he did not give complete information about his prior convictions because "[a]t that time I was impaired and I had no knowledge. There are some incidents in my life that I don't have recollection of." Holmes also testified that he failed to mention a military court martial on his employment application.
 
 
 12
 Also at trial, Lloyd reiterated that his investigation had produced no evidence to support Holmes's original story that he omitted material information from his employment application because he was rushed. This, combined with Lloyd's conclusion that Holmes's application was "very well written," led Lloyd to conclude that the omissions were intentional. Lloyd also explained at trial that his agency had a policy which mandated an employee's termination upon discovery of an intentional falsification of an employment application.
 
 
 13
 After considering the trial evidence, the district court held for Holmes, finding that his alcoholism caused him to omit his prior arrests and convictions from the employment application, and that he was fired solely because of his alcoholism. The district court then went on to hold that Holmes's alcoholism had not affected his work performance, and that he was otherwise qualified for his position. Thus, the district court concluded that federal law required the government to accommodate Holmes's illness,[5] and that its failure to do so was cause for awarding damages and court costs to be assessed against the government.
 
 
 14
 The government timely appeals.
 
 II.
 
 15
 An initial point about the statutory framework within which we should examine Holmes's discharge. Holmes brought this suit in federal district court on a theory of employment discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. The district court did not analyze the propriety of Holmes's discharge under Title VII.[6] Rather, it did so under the Rehabilitation Act of 1973 ("the Rehabilitation Act" or "the Act"). 29 U.S.C. § 701 et seq.
 
 
 16
 The government does not assign error to this analysis. Indeed, the government itself frames the issues presented by this case as ones involving the proper construction of the Act. We have our doubts about the propriety of analyzing Holmes's discharge under the Act, when his complaint mentioned only a Title VII cause of action. However, because in our view Holmes cannot establish unlawful discrimination under either the Act or Title VII, we do not address this underlying issue.
 
 III.
 
 17
 The framework for a case under the Act. We have recently reaffirmed that a case of employment discrimination brought under the Rehabilitation Act proceeds within the analytical framework laid out by the Supreme Court in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Dotson v. United States Postal Service, 977 F.2d 976, 977 (6th Cir.), cert. denied, 113 S.Ct. 263 (1992). See also Jasany v. United States Postal Service, 755 F.2d 1233, 1249-50 n. 5 (6th Cir.1985) (indicating that the Burdine framework is employed in Rehabilitation Act cases). Under this framework, as it has been modified for Rehabilitation Act cases, a plaintiff must first establish a prima facie case by showing that (1) he is a handicapped individual under the Act; (2) aside from his handicap, he was "otherwise qualified" for employment;[7] (3) he was excluded solely because of his handicap; and (4) the relevant program or activity is subject to § 504 of the Act.[8] See Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir.1995) (citing Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir.1988), cert. denied, 493 U.S. 810 (1989); Ristoff v. United States, 839 F.2d 1242, 1243-1244 (7th Cir.1988). After the plaintiff has established a prima facie case, the defendant has the burden of coming forward and proving that the plaintiff was not an "otherwise qualified" handicapped person, that is, that the plaintiff was unable to meet all of the program's requirements in spite of his handicap. Harris v. Adams, 873 F.2d 929, 932 (6th Cir.1989). The defendant may also satisfy its burden by establishing that plaintiff's rejection from the program was for reasons other than his handicap. Id.
 
 
 18
 Because we follow the Burdine framework in Rehabilitation Act cases, we do not examine the adequacy of Holmes's proofs at the various stages of the Burdine analysis. As the Supreme Court in United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983), explained, once (as here) all of the evidence is in, the Burdine proof structure is no longer relevant. Thus, the question presented by this appeal is whether Holmes established by a preponderance of the evidence that he was discharged solely because of his disability.
 
 A.
 
 19
 On appeal, the government argues that even if Holmes suffered from a disability, and even if his disability caused him to omit mention of his prior convictions on his employment application form, and even if Holmes was "otherwise qualified" for the position,[9] still Holmes was not entitled to a verdict in his favor. This is so, explains the government, because there was no evidence in the record to support the district court's conclusion that Holmes was fired solely because of his disability. We agree.
 
 
 20
 Beyond peradventure, in order for Holmes to have been removed solely because of his disability, DDMT must have had knowledge--either actual or constructive--that Holmes suffered from a disability. The district court found that Holmes placed DDMT on notice about his alcoholism when, on April 23, 1991, he enrolled in DDMT's Employee Assistance Program. Further, the district court found that Holmes's written response to the Notice of Proposed Removal[10] placed Ernest Lloyd on notice that Holmes was an alcoholic.
 
 
 21
 Leaving to one side Ernest Lloyd's testimony that he was not aware that Holmes was even alleging alcoholism as a defense to his termination until after the MSPB hearing, we note that Holmes provides no evidence which would support the district court's conclusion that DDMT knew or should have known that Holmes suffered from alcoholism before it issued its Notice of Proposed Removal on April 5, 1991. Whatever knowledge DDMT had about Holmes's disability came, according to the district court's own findings, after the April 5th Notice was issued. Thus, there is no basis in the record for the district court's conclusion that Holmes's removal, which was based on the April 5 notice, was solely because of his alcoholism.
 
 
 22
 Moreover, though the record establishes that the DDMT knew Holmes was an alcoholic at the time it made the final decision to fire him, Lloyd testified that he fired Holmes based solely on misrepresentations contained in Holmes's employment application. Lloyd's testimony stands unrebutted, and there is nothing in the record before us to suggest that the misrepresentations were being used as a pretext to justify an employment action that was really based on Holmes's alcoholism.
 
 
 23
 Holmes suggests that his alcoholism caused him to falsify his employment application. That may be true, but there is no evidence that the DDMT had any reason to know of the supposed connection before Holmes was discharged. Holmes's reply to the Notice of Proposed Removal does assert that his alcohol problems were a cause of the criminal conduct he did not mention on the application, but it does not contend that his alcohol problems also or alternatively caused him to lie on his employment application.
 
 
 24
 Absent any indication that the DDMT knew that Holmes's misrepresentations were caused by alcoholism, the termination of Holmes's employment cannot be said to be "solely by reason of his handicap." See Landefeld v. Marion General Hosp., Inc., 994 F.2d 1178, 1181 (6th Cir.1993) ("Even if plaintiff's behavior was caused by his mental illness, the [defendant] had no knowledge of this. Accordingly, there is no evidence at all that the [defendant] acted solely in response to plaintiff's handicap"). We express no view about whether the discharge would have been justified if the evidence established that DDMT knew that the misrepresentations were related to his alcoholism, see Ferby v. United States Postal Serv., 1995 WL 699618 (6th Cir.1995) (unpublished), but given that the record does not establish DDMT had knowledge on this score, there can be no question at all about the lawfulness of the discharge.
 
 
 25
 Accordingly, the district court's judgment in favor of Holmes on his Rehabilitation Act claim is REVERSED.
 
 
 
 [1]
 If an applicant's response to the question is "yes," the application form instructions direct the applicant to provide details which include: the date of the offense, the charge, the location where the offense took place, the court which heard the matter, and the action taken in response thereto
 
 
 [2]
 These included:
 (1) A March 1980 conviction for driving while under the influence. For this offense, Holmes was sentenced to eleven months and twenty-nine days; all but two months of this sentence were suspended. After the two months of incarceration, Holmes was on probation for the original period of the sentences of incarceration;
 (2) A September 1980 conviction for disorderly conduct;
 (3) A December 1984 conviction for disturbing the peace; and
 (4) A May 1985 conviction for shoplifting.
 
 
 [3]
 The MSPB judge did not expressly find that Holmes intentionally falsified the application form. Rather, that judge affirmed "the agency's charge of falsification of a government document," because he found the charge "supported by a preponderance of the evidence." But the falsification charge, itself, contained an allegation by DDMT that Holmes had intentionally omitted information regarding his past criminal history
 
 
 [4]
 The MSPB judge based this finding on Holmes's failure to present expert testimony on his disability of alcoholism
 
 
 [5]
 Specifically, the district court found that the government should have allowed Holmes to enter into a "Last Chance Agreement" by which he would have been given a last change to avoid having his handicap interfere with his work performance and thereby avoid termination
 
 
 [6]
 Handicap discrimination, of course, is not prohibited by the terms of Title VII
 
 
 [7]
 In Jasany, where we adopted the Burdine framework in Rehabilitation Act cases, we referred with approval to Pushkin v. Regents of Colorado, 658 F.2d 1372 (10th Cir.1981). In Pushkin, the court, relying on the authority of Southeastern Comm. College v. Davis, 442 U.S. 397, 99 S.Ct. 2361 (1971), explained what it means for a handicapped individual to be "otherwise qualified" as follows:
 If the plaintiff's handicap would preclude him from doing the job in question, the plaintiff cannot be found to be otherwise qualified. If the handicap would not preclude the individual from performing the job in question, however, and the plaintiff has met all other qualifications for the position in question, the plaintiff cannot be rejected from the program solely on the basis of his handicap.
 Pushkin, 658 F.2d at 1385.
 
 
 [8]
 There is no dispute in this case that DDMT is an agency which is covered by the Rehabilitation Act
 
 
 [9]
 The government does not make this argument explicitly. We think that it is, however, a fair statement of the government's position, given the way that it sets the arguments forth in its brief
 
 
 [10]
 The response also propounded the view that Holmes omitted the relevant information because he was "rushed."