981 F.Supp. 1279 (1997)
Gerald M. VARDIMAN, Plaintiff,
v.
FORD MOTOR COMPANY, Defendant.
No. 4:96CV1795CDP.
United States District Court, E.D. Missouri, Eastern Division.
November 13, 1997.
*1280 W. Brandt, Berkowitz and Feldmiller, Kansas City, MO.
Eugene Howard, St. Louis, MO.
Althea Johns, St. Louis, MO.
Jocelyn Villanueva, Berkowitz and Feldmiller, Kansas City, MO.

MEMORANDUM AND ORDER
PERRY, District Judge.
Before the Court is defendant's motion for summary judgment. Plaintiff Gerald M. Vardiman's complaint alleges that defendant Ford Motor Company discriminated against him on the basis of his alcoholism when it terminated and refused to reinstate him, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA). Defendant asserts that its actions had nothing to do with plaintiff's alcoholism, but that it terminated plaintiff for his failure to return to work from a medical leave after the company sent him a "five day letter" notifying him that he must return to work or would be terminated. Although there are factual disputes remaining in this case, none of those disputes are material to plaintiff's claim. The evidence shows that there is an absence of any genuine issue for trial and, as a matter of law, plaintiff cannot prevail. Therefore, the Court will grant defendant's motion for summary judgment.

I. Factual Background

Most of the facts set forth here are undisputed. Where the facts are disputed, that is noted.
Plaintiff began working at defendant's St. Louis assembly plant in 1988. He was an hourly laborer in the spray painting department until his discharge in November, 1993. During his employment, plaintiff was a member of Local 325 of the International Union of Automobile Workers ("UAW"), the certified bargaining representative of all hourly employees of defendant.
On October 26, 1993,[1] plaintiff telephoned Linda Turner, a representative of the Ford-UAW Employee Assistance Plan ("EAP"), and told her he was checking himself into an inpatient alcohol treatment program at Hyland Center.[2] Turner told plaintiff to call the labor relations department to request sick leave, which defendant did. Plaintiff claims that he told the labor relations department that he was going to the hospital for treatment of alcoholism, and also told them he had changed his address; defendant claims plaintiff only indicated that he was going into the hospital, and that if any change of address was mentioned, its employee would have told plaintiff he had to come to the plant to change his address in person and in writing, as required by company policy and the union contract. In any event, it is undisputed that the defendant granted plaintiff a conditional fourteen-day medical leave, and plaintiff entered the Hyland Center for inpatient alcohol abuse treatment on that day. Plaintiff was an in patient for three days, and was discharged from the "detox" unit on October 29, 1993. On November 1, 1993 plaintiff began intensive out-patient treatment.
On November 6, 1993, plaintiff's fourteen-day medical leave expired. It is undisputed that plaintiff had no contact with his work unit or with the labor relations department from the day his leave was approved up to this point, although plaintiff has provided evidence that in October he was in contact with Ms. Turner, and the medical center sent a letter to Turner on October 28, confirming his admission. There is no evidence that plaintiff had contacted Turner at all between his release from the in-patient center on October 29 and his termination. On November 9, 1993, defendant sent a letter to plaintiff telling him that he must respond to the letter or return to work within five days or he would be terminated. Defendant sent the *1281 letter to plaintiff's last address of record, but he had moved. The letter was received at that address and signed for by "E. Holliday", plaintiff's former roommate's girlfriend; plaintiff denies ever receiving the letter.
By November 17, 1993, plaintiff had not reported to work, and defendant's Senior Labor Relations Representative David Dunaway terminated plaintiff's employment. On November 19, 1993, plaintiff reported to work with the medical documentation regarding his leave of absence. Defendant informed him he had been terminated for failing to return to work or respond to the letter, and plaintiff requested reinstatement.
On December 3, 1993, the union filed a grievance on plaintiff's behalf. The grievance form, which is signed by plaintiff, states, among other things, that he had talked "with someone in labor relations & some one [sic] told the aggrieved that he will have to come in and update his address...." The grievance form also admitted that his failure to change his address caused him to miss defendant's five day quit letter, and added "the aggrieved blames nobody for this mix-up but him self [sic], and makes no excuses for him being naive to the correct procedures." Plaintiff now contests the admissions in this letter, and testified in his deposition that he merely signed a blank piece of paper, and that union officials had filled in that language over his signature.
The union withdrew the grievance at the grievance's second stage (after filing, but prior to a hearing). Plaintiff appealed Local 325's decision to withdraw his grievance to the local's membership, but his appeal was defeated by a majority vote of the membership. Plaintiff then appealed the decision to the International Union's board, which conducted a full hearing, and again denied plaintiff's appeal. Because the union withdrew the grievance, defendant did not further consider plaintiff's request for reinstatement, and did not reinstate him.
Plaintiff had one prior hospitalization for alcoholism treatment while he worked at Ford, in 1989. He was given leave on that occasion, and the EAP office, including Linda Turner, was aware of this hospitalization. Although plaintiff was disciplined for absenteeism several times, there is no evidence that anyone at Ford other than the EAP office knew of plaintiff's alcoholism. Turner has testified that she did not tell Dunaway or anyone else at Ford about plaintiff's problem, and that the EAP office maintained strict confidentiality of all employee problems brought to them, because the purpose of the EAP program is to allow employees to seek treatment without adverse employment actions.[3] Dunaway testified that he had no knowledge of plaintiff's alcoholism.
Article VIII, § 30 of the Collective Bargaining Agreement between defendant and plaintiff's union provides for the issuance of medical leaves, and § 5 of the same article provides for the "five day letter." According to the deposition testimony of former Senior Labor Relations Representative David Dunaway, the plant's standard procedures for issuing a medical leave are that the employee must notify Labor Relations of the need for leave. Labor Relations then will grant a conditional sick leave of absence for a limited period of time, usually only 14 days. Prior to the expiration of a conditional leave, an employee must (1) return to work with the required medical documentation; (2) supply the required medical documentation and seek an extended leave; or (3) contact the Plant and satisfactorily explain why the required documentation cannot be provided. If by the end of the conditional medical leave, the employee *1282 has failed to act as required, a five day quit letter will be sent to the employee pursuant to Article VIII, § 5. Plaintiff does not object to this description of the procedures, except with respect to the form in which the medical documentation must be presented.
Defendant's policy and the union contract required that employees come into the plant in person and change their addresses in writing. Plaintiff had changed his address in person and in writing on the company-required forms several different times while at Ford's employ. Numerous other union employees have been terminated by Ford for non-compliance with five-day letters when they had failed to properly notify the company of their changes of address, and the union frequently publicized this in its newsletters and warned members that it was their responsibility to keep the company records properly updated.

II. Legal Standards

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment should issue, a court views the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party has the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party may not, however, "rest on mere allegations or denials" but must demonstrate on the record the existence of specific facts which create a genuine issue for trial. Fed.R.Civ.P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).
The ADA prohibits employment discrimination based on a person's disability. In the absence of direct evidence of disability discrimination, courts employ the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir. 1996) (applying McDonnell Douglas to ADA claims). Under this burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination.
To establish a prima facie case of discrimination based upon a disability, plaintiff must show that: (1) he is disabled within the meaning of the ADA, (2) he was able to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996).
If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The defendant does not need to persuade the court; rather, it must simply provide some evidence of a non-discriminatory reason for its actions. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). If the defendant articulates such a reason, the plaintiff must then demonstrate that the defendant's reason is a pretext for discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The burden of proving discrimination remains on the plaintiff at all times. Hicks, 509 U.S. at 515-16, 113 S.Ct. at 2751-52. The plaintiff must do more at the pretext stage than discredit the defendant's reason; the plaintiff must show the reason is a pretext for discrimination. Id.; see also Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir.1995).
In order to avoid summary judgment, a plaintiff alleging discrimination must present evidence that, when viewed in its entirety, *1283 (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996); see also Krenik, 47 F.3d at 958.

III. Discussion

Although, as stated above, the parties' have several disputes of fact, the undisputed evidence in this case shows that plaintiff was terminated because he failed to respond to the five-day letter, and that he was not reinstated because the union withdrew his grievance. Plaintiff has not brought any claims against the union here. Plaintiff has presented no evidence that the change of address dispute has anything to do with plaintiff's alcoholism, or that the company policy is applied inconsistently. He has presented no evidence that the decisionmaker, Dunaway, knew of his alcoholism at the time of the termination decision. Plaintiff has also presented no evidence that his alcoholism prevented him from properly notifying the company of his change of address. Defendant has also shown that its failure to rehire plaintiff was a result of the union's dropping the grievance.
To put this case into the proper analytical framework, the Court will assume, without deciding, that plaintiff could meet his burden of proving a prima facie case. Defendant has clearly met its burden of production by articulating a legitimate, non-discriminatory reason for plaintiff's discharge and for the company's failure to rehire plaintiff. The Court will therefore examine whether defendant's proffered reason is a pretext for discrimination. The Court finds that plaintiff has failed to come forward with any evidence giving rise to any genuine factual dispute as to whether intentional discrimination was the real reason defendant terminated or refused to rehire plaintiff.
Plaintiff first asserts that defendant's proffered reason is pretextual because defendant knew that plaintiff was an alcoholic, or at least knew that he was being treated for alcohol abuse. Plaintiff bases this assertion on the fact that Linda Turner, the EAP representative at the plant, knew about plaintiff's alcohol abuse problem. Although an employee of defendant, Turner's responsibility is to help employees find treatment for substance abuse while protecting the employee's confidentiality.
Plaintiff vaguely suggests that the EAP representative is an agent of defendant for purposes of the definition of "employer" in § 12111(5)(A) of the ADA.[4] In interpreting whether a person is an agent of the employer for purposes of imposing liability under the ADA, courts consider whether the employee plays any role in decisions affecting employment. See DeVito v. Chicago Park Dist., 83 F.3d 878, 881 (7th Cir.1996) (holding that acts of employer's agents imposed liability on the employer because agents adjudicated employment disputes on employer's behalf); Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n, 37 F.3d 12 (1st Cir.1994) (stating that trade association was not an "employer" unless it exercised control over important aspects of employment). Where an employee serves no such role, there is no violation of the statute since the employee could not have been responsible the adverse employment decision. Proving illegal discrimination turns on the decision-maker's knowledge of the plaintiff's protected condition. See, e.g., Fink v. Kitzman, 881 F.Supp. 1347, 1374 (N.D.Iowa 1995) (holding that where employer who fired employee did not know of employee's disability, employee could not prove disability discrimination); Mazzarella v. United States Postal Serv., 849 F.Supp. 89, 96-97 (D.Mass.1994) (holding that decision-maker's lack of knowledge of plaintiff's mental disorder precluded liability under the Rehabilitation Act). In this case, given that an EAP representative has no power to affect employment decisions, and, in fact, is obligated to shield the decision-makers from an employee's personal or substance abuse problems, she cannot be defendant's "agent" within the meaning of the ADA. Turner, defendant's EAP representative, committed no act even remotely cognizable under the ADA, and there is no evidence that she breached her duty of confidentiality.
*1284 Plaintiff next seems to allege that defendant's procedures for changing an employee's address were unreasonable or unfairly applied to plaintiff because plaintiff is an alcoholic. The Court will briefly consider this argument even though it has already found that defendant was not aware of plaintiff's alleged disability.
The required change of address process was publicized at Ford and plaintiff followed the proper procedures on other occasions. Moreover, plaintiff does not present any evidence that other employees similarly situated were treated any differently (e.g., excused from defendant's change-of-address procedural requirement, or notified by other means). Plaintiff does not allege that the change-of-address procedures were invoked only in his case because he is an alcoholic, or because defendant planned to terminate plaintiff because of his alcoholism.
With regard to the failure to rehire, plaintiff has presented no evidence contradicting in any way defendant's evidence that once the union dropped the grievance, the company did not proceed further with the request to rehire. Plaintiff has presented no evidence that this is anything other than standard procedure or that his alleged disability had anything to do with this procedure.
The Court finds that plaintiff has failed to present any evidence that raises a genuine issue of material fact that defendant's proffered reasons for discharging and failing to rehire plaintiff were pretextual. Nothing in either party's description of the five day quit procedure, or in defendant's implementation of this procedure vis-a-vis plaintiff, suggests an improper motive for plaintiff's discharge. Plaintiff has adduced no evidence that other employees similarly situated were excused from the five day quit letter requirements, or that the procedures were applied only to plaintiff because of his alcoholism.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment [# 29] is granted.
NOTES
[1] There is some evidence in the file that plaintiff actually called Turner the day before, and they may have discussed insurance coverage for the treatment.
[2] Turner is a non-management union employee of defendant, and answers directly to the National Employee Supports Services Program in Detroit, Michigan  not to management at defendant's plant in St. Louis, Missouri.
[3] In a letter of understanding between defendant and the UAW, the benefits of such an EAP program are discussed:

[Ford and the UAW] agree that it is in their mutual interest to provide a framework within which UAW-represented Ford employees voluntarily and confidentially may seek professional counseling, treatment, or other assistance to address such problems....
* * * * * *
... Employees with alcoholism, drug dependency, emotional or personal problems will be able to seek help voluntarily [from EAP representatives] without having to be concerned that their employment status will be affected because they have sought help for such problems.
The EAP program thus establishes a means by which employees with substance abuse or personal problems can seek assistance with defendant's help, but without the knowledge of those who could adversely affect the employees' employment status.
[4] The ADA provides that an "employer" is "a person engaged in an industry affecting commerce ... and any agent of such person...." 42 U.S.C. § 12111(5)(A).