**Dennis Wayne ROGERS, Plaintiff,**

v.

**CH2M HILL, INC., Defendant.**

**Civil Action No. 97–A–860–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 28, 1998.

---

David A. Gespass, Birmingham, AL, for plaintiff.

Richard H. Gill, Montgomery, AL, Theodore A. Olsen, Denver, CO, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

This is an Americans with Disabilities Act case. *See* 42 U.S.C. § 12101 *et seq.* It is presently before the court on a Motion for Summary Judgment by Defendant CH2M Hill, Inc. For the reasons discussed herein, the court holds that summary judgment in favor of the Defendant is due to be GRANTED.

## I. INTRODUCTION & PRIOR RULING

This is not the first time that this case has been the subject of an opinion of this court. On December 16, 1997, the court denied a motion to dismiss filed by the Defendant. In its opinion, the court decided that Plaintiff had stated a claim sufficient to survive a motion to dismiss, even though there were (and remain) two particular difficulties with Plaintiff's case.

One difficulty was that Plaintiff had never informed the Defendant of his disability, and had never requested an accommodation, until after he was discharged. The court decided that it could not dismiss the case on this basis since the Plaintiff advanced the theory that his disability and the need for an accommodation should have been obvious to the employer. The court noted that there are circumstances where an employer is required to know of the disability and the need for an accommodation, even without notice from the employee. The court held that it would be up to the Plaintiff to prove these circumstances. In other words, Plaintiff had alleged (and must prove) that he had exhibited symptoms which were "so obviously manifestations of an underlying disability that it would be reasonable to infer that his employer actually knew of the disability." *Miller v. National Cas. Co.,* 61 F.3d 627, 630, (8th

Cir.1995), quoting from *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 934 (7th Cir.1995). The court further noted that most of the opinions to address this theory affirmed summary judgment in favor of the employer.

A second problem with Plaintiff's case was his failure to request any particular accommodation. Defendant argued that Plaintiff had requested an unreasonable accommodation by requesting an indefinite amount of leave. The court denied the Defendant's motion, finding the Defendant's case citations to be somewhat inapposite. Defendant cited to cases which stood for the proposition that Plaintiff could not request an indefinite amount of leave. Rogers alleged that he had only requested an amount of time for his medication to start working, not an indefinite amount of time. The court reserved the question of whether Rogers' "requested accommodation was so 'speculative' as to be unreasonable." Rather, the court held that would be a matter more appropriate for consideration after development of the evidence.

In its order, the court allowed the Plaintiff's case to go forward with one final caution. The court noted that the "Defendant ha[d] directed the court's attention to a number of cases where summary judgment was granted on facts similar to those alleged" by Rogers. *Memo. Opin. & Order at 8.* The court noted that dismissal is a different animal from summary judgement, however, and stated that "[t]ime will tell if the Plaintiff can prove the allegations" that he brought. *Id.* The time to test Plaintiff's evidence has now arrived.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* 477 U.S. at 323, 106 S.Ct. 2548.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989).

## III. FACTS

In deciding a motion for summary judgment, the evidence presented by the nonmovant, here the Plaintiff, must be believed and all justifiable inferences must be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. In this case, that point of view is not very difficult for the court to adopt. Except for a few matters, Plaintiff "does not dispute the facts as catalogued in defendant's brief." *Plaintiff's Brief at 1.* Those facts—when pared down to the relevant and material—are actually rather simple.

Plaintiff was an employee of the Defendant. He was employed by CH2M Hill for a period of about 9 1/2 months, mainly during 1995. He began his employment on March 13, 1995, working as an Engineer 6, a senior level engineer with the company. At the time that he was hired, he had over 20 years of prior experience as an engineer.

CH2M Hill is a consulting engineering firm. Employees who hold positions such as that held by the Plaintiff are expected to be 'project managers.' They manage rather complex projects, and provide leadership and

a high level of technical assistance to junior staff. They are expected to work independently, and to coordinate projects for both themselves and those they supervise.

Despite his experience, Plaintiff was a disappointment after being hired. He was not providing proper guidance to junior engineers; he was not preparing proper work plans; and he was not properly managing his projects. CH2M Hill has provided contemporaneous evidence of complaints that it received from junior level engineers about Rogers' supervision and performance. As a result of these problems, CH2M Hill decided in December of 1995 that Rogers should be dismissed. Defendant refrained from doing this until after the holidays, but did finally terminate Plaintiff's employment on January 2, 1996.

Plaintiff does not really dispute that there were performance problems with his employment. He does, however, dispute that he was given proper notice of such problems.[1] As will become obvious from the legal discussion below, however, whether Rogers was fully informed of his performance problems is not a fact which helps to establish his case. Plaintiff fails to prove a prima facie case on causation, therefore, the court does not look to see whether Defendant's asserted reasons are pretextual.

Subsequent to being fired, Plaintiff finally broke the news to CH2M Hill that he suffered from clinical depression. Plaintiff had never before told the employer that he had this illness, nor had Plaintiff asked for any accommodation as a result of this illness. Rogers informed CH2M Hill that he had only been diagnosed five days earlier (by a general physician, on December 28), and had just started a regimen of medicine. He requested that his termination be revoked, and that he be allowed to take leave to allow his medicine to adjust.

Defendant was surprised by this notification. Plaintiff had never before even requested time off, which he indisputably had the right to take. Defendant, therefore, did not rescind the termination. Rather, Defendant believed that reinstatement would be "neither prudent nor a reasonable request" given that Mr. Rogers "had performed so poorly as a senior project manager throughout his entire tenure with the Company." *Defendant's Brief at 5.*

After his termination, Plaintiff decided to file this lawsuit. In the lawsuit, he does not dispute that he never informed CH2M Hill of his illness. Rather, he seeks to rely on a few alternate theories that CH2M Hill had notice of his disability (and hence, could have discriminated against him because of his disability). First, Rogers argues that his disability, and the need for an accommodation, should have been obvious to his employer. In support of this, he offers an affidavit of a co-employee, his own testimony, and some "transcripts" of post-termination phone calls that Plaintiff made to his former bosses within CH2M Hill. Second, Plaintiff argues that his discussion with CH2M Hill's employee assistance program ("EAP") should serve as the basis for liability. These theories—which are, at times, rather convoluted—and the evidence that Plaintiff offers in support of them is more appropriately discussed below in light of relevant legal principles.

After leaving CH2M Hill, Plaintiff began seeing a psychiatrist about his condition. His first visit to this professional was on May 28, 1996. He has obtained subsequent employment as an engineer with the State of Alabama, and appears to be doing an acceptable job.

## IV. DISCUSSION

Plaintiff's theory of discrimination does not rest on the most compelling of arguments. He alleges to have been discriminated against because of his clinical depression, but admits that he never informed the employer

---

1. CH2M Hill has asserted that it held as many as 19 meetings with Rogers throughout the last half of 1995, including 17 meetings between October 23 and December 18. Plaintiff does not dispute that these meetings took place. Rather, in his affidavit he states that he "was never told specifically that [he] had to improve or correct certain deficiencies or that [his] continued employment was in jeopardy." In effect, he says that he recalls the meetings, but does not recall the criticism. In support of this assertion, he also claims that he is very sensitive to criticism, and would recall if such criticism had been given.

of the depression. Instead, Plaintiff relies on arguments which are at best only colorable, and at worst not supported by his own evidence or citations to case law.

### Prima Facie ADA Violations.

 The court is able to grant summary judgment in this case because Plaintiff is lacking proof on an essential element of an ADA claim. In order to state a prima facie case under the ADA, a plaintiff must show that (1) he is suffering from a disability; (2) that he is qualified for the position in question; and (3) he has been discriminated against (in this case terminated) because of his disability. *Duckett v. Dunlop Tire Corp.,* 120 F.3d 1222, 1224 (11th Cir.1997). Here the court may assume that Plaintiff meets the first two elements of the case. Neither side contests, for present purposes, that he suffers from depression and anxiety. Although Defendant does contest that Rogers' disability impairs a major life activity (and hence is not a "disability" under the ADA), the court will accept for now that Mr. Roger's depression impairs, as asserted, his ability to think clearly, sleep, and work.[2]

 Further, the Defendant never really puts up much of an argument regarding whether Rogers was "otherwise qualified."

Qualified has somewhat of a different meaning in ADA cases, than it has in Title VII cases. Here, the phrase does not mean minimally qualified to meet the requirements of the positions. Rather, in discussing "qualified" under the ADA, a court is to focus on whether the Plaintiff can actually perform the job ably, with or without the accommodation. *See Harris v. H & W Contracting, Co.,* 102 F.3d 516, 523 (11th Cir.1996) (discussing employee's performance throughout history of job in determining question of whether employee was qualified). It is apparent from the evidence that Mr. Rogers was not performing his job well at the time that he was terminated. Nevertheless, he contends (and the law allows him to prove) that he would have been qualified to perform the job if he had been given the proper accommodation. *See* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as an employee, who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Rogers' evidence that he is presently performing as an engineer with the State of Alabama—after his medicine has adjusted—creates at least a factual dispute as to whether Rogers would have been quali-

---

2. The court wants to emphasize that it is merely assuming that Rogers has a disability. Major depression is, of course, a mental impairment. *Pritchard v. Southern Co. Serv.,* 92 F.3d 1130, 1132 (11th Cir.1996). Merely having a mental impairment does not mean that Rogers is disabled, however. Rogers must also show that the depression limits a major life activity. *Id.; see, e.g., Leisen v. City of Shelbyville,* 968 F.Supp. 409 (S.D.Ind.1997) (granting summary judgment because plaintiff suffering from depression was not disabled; depression did not limit a major life activity). Here, Rogers has relied primarily on the fact that his depression has limited his ability to do his job. The court finds that argument to be somewhat troubling when viewed alone. "When individuals claim that they are substantially limited in the major life activity of 'working,' their condition 'must significantly restrict [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997). The fact that Rogers was not able to be a project manager for CH2M Hill does not necessarily mean that he is disabled under the meaning of the ADA, therefore.

It appears to the court from his other symptoms that there is at least a fact question as to whether he is disabled, however. Rogers argues that his sleep patterns and thought patterns are disrupted. The fact that he was not able to concentrate impeaches his ability to show that he was qualified for the job. Nevertheless, the court believes that the matter could still go past summary judgment. In *Pritchard,* the Eleventh Circuit held that summary judgment in favor of an employer should have been denied, where the depressed employee suffered from sleep and thought problems. 92 F.3d at 1133. The court noted that this evidence conflicted with Plaintiff's assertions that she was qualified. Nevertheless, the court believed that it was possible for both to be true: plaintiff could "have suffered from these symptoms and they limited major life activities, but she was able to control them sufficiently with the help of medication to perform at work in [a similar job]." *Id.* 92 F.3d at 1134; *see generally Harris v. H & W Contracting Co.,* 102 F.3d 516, 520–21 (11th Cir.1996) (enforcing ADA regulations which hold conditions that are completely controlled by medication to be conditions which substantially limit a major life activity).

fied to perform the CH2M job, if given an accommodation.[3]

Assuming that Rogers is both disabled and qualified, the court will turn its attention to the third and deciding factor. Causation is the death of Rogers' case. He cannot show that he was actually discriminated against because he was disabled. CH2M Hill had no knowledge of the disability, and Rogers never provided it with any notice.

### ADA Discrimination, in general.

■ Before the court begins to analyze whether CH2M Hill knew of Rogers' disability (and hence, could have discriminated against Rogers because of his disability), the court should take some effort to point out why the issue of notice by the employee of his disability is so important under the ADA. The court realizes, of course, that what the specific language of the ADA requires is knowledge by the employer of the disability, and not necessarily notice by the employee. After all, the ADA bars "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability ..." 42 U.S.C. § 12112(b)(5)(A) (emphasis in original). There are two reasons why notice is really the more important question under the ADA, however.

First, notice by the employee is generally needed because of the nature of protected characteristics under the ADA. The protected characteristic in an ADA case is not something which is always obvious. Some disabilities—such as the need for a wheel chair—are obvious to the casual observer. Many, however—including mental disabilities such as Mr. Rogers' depression and anxiety—are only detectable by specially trained professionals, and then only after a careful analysis. An ADA case is not, therefore, directly analogous to other types of employment discrimination. For example, in Title VII suits, there is rarely if ever a dispute over whether the protected characteristic—such as race or gender—was known. *See Hedberg*, 47 F.3d at 932. That is not the case with many disabilities, however. If an employer does not know of the specific cause for some behavior of the employee, the employer might attribute that behavior to a non-protected cause. Notice by the employee is needed in an ADA case, therefore, in large part because without it the employer might not ever know that the employee suffers from a disability.

■ Second, the 'cure' for ADA discrimination is somewhat different from the 'cure' in other discrimination cases. In cases dealing with other forms of discrimination, the baseline is that the protected characteristic should be ignored. For example, race is simply not supposed to be a consideration. Ignorance by the employer of the employee's race is, therefore, somewhat of a benefit to both employer and employee. If the race of the employee is not known, no discrimination can occur as a result of it. The baseline is different in ADA cases, however. Under the ADA, the protected characteristic (disability) must not be ignored, but rather should specifically be taken consideration of, and the employer *must* act on the basis of that characteristic. *See* 29 CFR § 1630, App. "Background" (contrasting Title VII, which bars consideration of prohibited characteristics, to ADA method of requiring consideration of characteristics). Indeed, the very definition of discrimination under the ADA includes not making "reasonable accommodation" to an employee. *See* 42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"). Because of the requirements of the ADA, it becomes somewhat of a responsibility for the employer to (reasonably) individualize the work environment to the needs of a disabled employee. Since only an individual, and his own health professionals, know that individual's disability best, the ADA functions best where the employee makes known what he needs to be able to perform the job. The

---

**3.** Again, the court wishes to note that it is merely assuming that Rogers is "otherwise qualified" so that it may get to the dispositive issue. Indeed, the proof that Rogers is performing as an engineer for the State of Alabama does not necessarily address whether he would have been able to perform for CH2M Hill. Further, this proof does not address whether Rogers would have been able to perform after a "reasonable accommodation."

personal nature of that sort of information is why "[i]n general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 CFR § 1630.9, App.

### Dismissal Came First.

Knowledge of the employee's disability is needed, therefore, for the employer to appropriately comply with the ADA. Viewing this requirement in light of the particular requirements of the ADA, and in light of the internal, mental nature of Rogers' problems, it becomes rather obvious that summary judgment is required in this case simply because Rogers failed to notify the CH2M Hill of his depression and anxiety. *Morisky v. Broward Co.*, 80 F.3d 445 (11th Cir.1996) sets forth the general law in this area.[4] On both the law and facts, it serves as fairly compelling precedent for granting summary judgment in favor of CH2M Hill.

The plaintiff in *Morisky* applied for the position of custodian with Broward County, Florida. *Id.* 80 F.3d at 446. On the day that she was to take required written test, Plaintiff brought along a vocational rehabilitation counselor. *Id.* The counselor informed the test proctor that Plaintiff was illiterate and suffering from asthma, and insisted that plaintiff be allowed to have the test read to her. *Id.* 80 F.3d at 446–47. Importantly, neither illiteracy nor asthma was the disability that the employee asserted she suffered— rather, Morisky kept that disability a secret. The proctor refused to allow the test to be read to plaintiff, believing that literacy was a requirement for the job that plaintiff sought. *Id.* 80 F.3d at 447. Morisky then left without taking the test, and shortly thereafter filed suit against the defendant under the ADA, alleging that the County had discriminated against her because of a developmental disorder. *Id.*

The court granted summary judgment to the defendant. *Id.* The court did so for the simple reason that plaintiff "failed to show that she was discriminated against 'because of' her disability." *Id.* Specifically, neither plaintiff nor her vocational counselor had informed the County of her developmental disorder, the actual disability at issue. *Id.* 80 F.3d at 448. Asthma is in no way related to the developmental disorder, and did not warrant discussion by the court as such. Further, notice of the illiteracy was also not enough, since there can be no assumption that an illiterate person is necessarily illiterate because of a mental or physical impairment. *Id.* As stated by the court, "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Id.*

In reaching their decisions in *Morisky*, both the Eleventh Circuit and the district court relied heavily on the decision of the Seventh Circuit in *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928 (7th Cir.1995). The pertinent part of *Hedberg*, which applies with equal validity here is a paragraph that states

> [A]n employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability. . . . At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner than an employer cannot fire an employee "*because of*" a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "*because of*" some other reason.

*Id.* 47 F.3d at 932. Importantly, in *Hedberg*, summary judgment was affirmed even though a doctor for the defendant employer knew of the plaintiff's condition before the termination. The decisive factor in favor of summary judgment, however, was the fact that the decision makers did not know of the disability.[5]

---

**4.** In *Morisky*, the Eleventh Circuit adopted per curiam, the decision of the Southern District of Florida, and published that district court's opinion as an appendix to its own decision. That makes the opinion binding precedent on this court.

**5.** As an aside, it should be noted that it is clear under the law that Rogers' post-termination notification is also of no effect, simply because it is post-termination. In *Miller*, the plaintiff had notified her employer after she was terminated that she was suffering from manic depression. The Eighth Circuit affirmed summary judgment. 61 F.3d at 630. Simple logic requires the conclu-

It is well-accepted, therefore, that ignorance by the employer of the employee's disability is a reason for granting summary judgment in favor of the employer. This is because of the very basis of the ADA. As stated by the Fifth Circuit in *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 163 (5th Cir.1996), cert. den. —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996), proving discrimination under the ADA requires that "an employee must show that the employer knew of such employee's substantial physical or mental limitation." *See also Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996) (stating that plaintiff must show that the "discrimination was by reason of the plaintiff's disability"); *see also, e.g., Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1181–82 (6th Cir.1993) (affirming summary judgment where authority who terminated plaintiff did not know of mental illness); *Adams v. Rochester Gen. Hosp.*, 977 F.Supp. 226, 235–36 (W.D.N.Y.1997) ("In order for an employer to fire its employee because of a disability, the employer must at the very least ... have knowledge of the disability.")

In this case, Plaintiff admits that he was dismissed before telling his employer of his depression and anxiety. On that basis alone, therefore, the cases stand against him. Realizing this, Plaintiff has sought to argue some alternative bases for holding CH2M Hill liable under the ADA. These are (1) that CH2M Hill should have known, and did know, of his disability because it was obvious; and (2) that CH2M Hill should be liable under the ADA because of the actions of its employee assistance program. Each of these argument is addressed, and rejected, in turn.

**Obvious.**

As noted in this court's opinion on the motion to dismiss, there is room under the ADA for an employee to argue that his disability was so obvious that the employer did know about the disability. The statute does not necessarily declare that the employee must notify the employer of the disability, rather just that the disability be "known." *See Stewart*, 117 F.3d at 1285 (the ADA "prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability"). Plaintiff here tries to argue that his disability was known, even though he told no one of it.

The paradigm of the case where the disability would be known without direct employee notification would be the example of a wheelchair-bound employee. The employer of such an employee knows that certain doors may need to be widened, certain furniture shifted around. Under the ADA, those accommodations-assuming they are reasonable under the facts and would not impose an undue hardship on the employer-would be required. The question here is whether the exception (or wording of the statute) which allows employees to claim that their disability was known to the employer, even when the employee did not notify the employer of such disability, is broad enough to cover Plaintiff's disability. The answer from this court is "no."

*Miller* and *Hedberg* both reference this general outline of 'obviousness' law, as discussed in the court's opinion on its motion to dismiss. In those decisions, it was held that an employer should be imputed to have knowledge of a disability where actions of the employee were "so obviously manifestations of an underlying disability that it would be reasonable to infer that his employer actually knew of the disability." *Miller*, 61 F.3d at 630, quoting from *Hedberg*, 47 F.3d at 934. Both decisions, incidentally, affirmed summary judgment in favor of the employer where this theory was advocated.

As the court has thought more about this area of the law, and as the court has been confronted with the evidence in this case, the court has become more concerned with its decision to allow this case to progress past the motion to dismiss stage. The court is inclined to believe that symptoms of depres-

---

sion that because the employer "did not know of [plaintiff's] disability until after her employment was terminated, it would have been impossible for the company to have made that disability the basis for the termination." *Id.* (affirming summary judgment in favor of employer); *see also Hedberg*, 47 F.3d at 932 (stating that it is "intuitively clear" that an employer cannot fire an employee because of a disability, unless the employer has knowledge of the disability).

sion or anxiety could never clearly be such manifestations of an illness that the employer would be held to have imputed knowledge of that illness. Interestingly enough, another decision which has cited the general principles of obviousness law, rejected that theory in the case of mental illness. In *Taylor,* a Fifth Circuit decision referenced above, the court affirmed a summary judgment in favor of the employer when the employee had only revealed his illness, but had not revealed his limitations, and had not made a request for an accommodation. In dicta, the court implied that it may be incumbent on the employer to approach the employee about a disability and accommodation, "[w]here the disability, resulting limitations, and necessary reasonable accommodations, are ... open, obvious, and apparent to the employer." 93 F.3d at 165. In stating this, the Fifth Circuit believed it a good example to note that "mental disabilities" often are not of this vein. *Id.* As the court went on to explain, when a court is "dealing in the amorphous world of mental disability ... healthcare providers are best positioned to diagnose an employee's disabilities, limitations, and possible accommodations." *Id.*

Also, as recognized by the district court for the Southern District of New York in dealing with a similar argument in an ADA termination case, there is always one sense in which a depressed plaintiff's condition is obvious. *See Stola v. Joint Ind. Bd.,* 889 F.Supp. 133, 135 (S.D.N.Y.1995). Defendant knows in those sort of cases that plaintiff is not adequately performing his job; that there are problems with his work. There is nothing, however, to suggest to employers that the poor performance of the plaintiff is not necessarily the result of some other factor such as general "poor performance ... mere misbehavior," or lack of ability. *Id.* An employer simply cannot know, and should not be held with surmising, that an employee suffers from depression or anxiety based on the mere fact that the employee is not performing his job. *See id.*

 There are certainly other mental illnesses where the symptoms are such that an employer may be put on notice. This court comes close to believing it to be impos-

sible for this to ever be proven in the case of depression or anxiety, however. Simply put, the ADA "does not require clairvoyance." *Hedberg,* 47 F.3d at 934. An employer would probably never be held to have imputed knowledge of a depression or an anxiety disorder of its employee. Asking the employer to guess at such is asking too much of the employer, and of the ADA.

### Even if ...

 Nevertheless, the court need not necessarily decide that its prior decision denying the motion to dismiss was in error. The court may rest its opinion here on a decision that-even if Rogers could show that knowledge of his depression could be imputed to the employer-Rogers cannot show that such knowledge should be imputed under the present facts. As noted in *Taylor,* it is up to the plaintiff to present evidence sufficient to impute knowledge of his disability to the employer. 93 F.3d at 165–66. Here, Plaintiff has rested his "obviousness" argument on three pieces of evidence.

The affidavit of Charles Cook serves as the primary basis for Plaintiff's obviousness contention. Cook was a co-employee of the Plaintiff, and states in pertinent part

> ... I had an office next to that of Mr. Rogers so I saw him on a daily basis. Towards the end of the summer of 1995, I noticed a dramatic change in his personality from when I had first met him earlier in the year. He had what I recognize, because of my own history, as a sad, or flat, affect. However, I do not think that was something that others would necessarily have noticed. What was noticeable to anyone who saw him regularly, and particularly to anyone who worked on projects with him, was that his self-confidence and assertiveness was gone. He was unable to make even the simplest decisions. For example, he would have difficulty deciding whether or not to go to lunch and making that decision was, for him, almost like deciding whether to buy a house.

*Charles Cook Affid.* The problems with this affidavit are evident on its face. Cook was not in management for CH2M Hill, so his statements in no way reflect on the knowl-

edge of CH2M Hill. Further, the statements are largely self-impeaching. Even Cook admits that others would not have necessarily noticed what he did—Cook could especially notice this sort of behavior because of his own personal expertise with depression symptoms.

Second, Rogers relies on some vague statements that he says he made to managers about his conditions. These are statements that the Plaintiff told supervisors that he was "feeling kind of down and depressed." *Rogers Depo.* at 28:2–6; *id.* at 37:8–19. First off, it should be noted that these statements do not reference any sort of clinical or medical depression, and are suspect for that reason. Further, it should be noted that these statements were not accompanied by a request for any accommodation, even in a general sense. *Id.* at 28:7–14; 39:12–22.

Third, Rogers presents evidence that purports to be transcripts of calls between himself and his former supervisors, in which he alleges that the supervisors make damaging admissions. Assuming that this evidence would be admissions of a party-opponent (and hence, admissible), this evidence likewise is of very little probative value. Basically, Plaintiff has presented 4½ pages of transcribed portions of phone calls. In those calls, the alleged supervisors make no damaging admissions. Indeed, mostly they make rather non-committal responses to rather leading, but still vague, assertions by Rogers. Taking this evidence in a very generous light to Plaintiff, the best that can be said is that the employers agreed with statements by Rogers about certain behaviors that he exhibited-that he was restless, could not relax, tried too hard, and "didn't look happy."

Viewing all of this evidence together, it is fairly obvious to this court that Plaintiff had exhibited some behaviors which may be considered symptoms of depression or anxiety prior to being terminated. After all, even Plaintiff does not question that the Defendant had some reason for terminating him when it did. Looking at the evidence which Plaintiff has presented, however, it simply is not substantial evidence sufficient to defeat summary judgment. It creates no issue of fact that Rogers' behaviors were "so obvious-

ly manifestations of an underlying disability that it would be reasonable to infer that his employer actually knew of the disability." *Miller,* 61 F.3d at 630, quoting from *Hedberg,* 47 F.3d at 934 (emphasis added). This conclusion is especially compelling in light of previous cases dealing with the obviousness approach.

Take, for example, the affirmance of summary judgment by the Eighth Circuit in *Miller.* In that case, the plaintiff was claiming depression and there was evidence that (1) the employee had told a boss that she "could not take the stress of her job and the family problems," (2) a nurse practitioner treating the plaintiff had told the employer that plaintiff had "situational stress reaction," and (3) plaintiff's sister had told the employer that her sister was "mentally falling apart" on two different occasions. 61 F.3d at 629. Even in the face of this evidence, the Eighth Circuit still concluded that "the record in this case would not support a finding that [plaintiff's] disability was obvious to her employer." *Id.* at 630.

Likewise, in *Landefeld,* 994 F.2d 1178, the Sixth Circuit affirmed a summary judgment in favor of the employer in a Rehab Act case where the employer had no knowledge of the plaintiff employee's bipolar disorder. 994 F.2d at 1181–82. The employer was actually aware of rather aberrant behavior of the plaintiff at the time of the dismissal. *Id.* 994 F.2d at 1179. The Plaintiff, a doctor, was dismissed for having inexplicably destroyed mail that was in other doctors' mailboxes. *Id.* The Sixth Circuit affirmed the summary judgment based on the fact that the employer did not know of the bipolar disorder. The Sixth Circuit never even suggests that the employer, a hospital, or the medical professionals who ran the hospital, were somehow required to guess that plaintiff had a mental problem. Although it is not apparent from the decision of the Sixth Circuit that the plaintiff raised the "should have been obvious" argument, it is at least somewhat telling that the Sixth Circuit never even considered this as a factor. The court did consider the issue of the employer's knowledge at the time that it made its decision to dismiss the plaintiff. *Id.* 994 F.2d at 1181. Certainly, if

a hospital, doctors, and medical professionals are not required to guess about such factors, engineers should not be required a heightened requirement.

Perhaps the most persuasive opinion dealing with similar situation, however, comes from a district court. In *Adams*, 977 F.Supp. at 235–36, the district court for Western District of New York dealt with a complaint by a depressed employee and stated that:

> Here, it is undisputed that [plaintiff employee] never requested an accommodation. Moreover, the record is clear that [plaintiff] never mentioned to [defendant] that his depression was affecting his ability to do his job. Employers are not required to be clairvoyant as to hidden medical problems of their employees and provide assistance where none is requested. *See Miller* . . .

> In order for an employer to fire its employee because of a disability, the employer must "at the very least . . . have knowledge of the disability." . . .

> [Plaintiff] claims that [defendant] should have known about his disability because in early 1994 he was behaving "strangely" at time and made three mistakes in his work. However, "[a]n employer is not obligated to observe employees for any behavior which may be symptomatic of a disability, and then divine that the employee actually suffers from a disability." . . . [Plaintiff's] alleged "strange behavior" and negligent work performance could be attributable to many things besides an ADA covered disability. It simply is not reasonable to expect [defendant] to infer that [plaintiff] suffered from a mental disability which the ADA would require the [employer] to accommodate from the limited proof of

"strange behavior" and performance problems found in the record. *Id.* 977 F.Supp. at 236.

Plaintiff here simply has not presented evidence from which a reasonable jury could infer that it was obvious to CH2M Hill that he suffered from a mental illness. At most, he has presented *some* evidence of *symptoms* from which someone *trained in psychology* might *infer* that he *possibly* had a problem. As noted above, employers are not required by the ADA to be clairvoyant regarding symptoms of their employees. Plaintiff's arguments regarding the obvious nature of his illness are not sufficient to defeat summary judgment.

### The EAP.

■ "Obviousness" is not the only argument of Plaintiff. Rogers also makes an argument that CH2M Hill is liable under the ADA because of the actions of its employee assistance program in this case. Plaintiff's argument about the EAP is rather odd, largely because of what he is not arguing. In the brief in opposition to summary judgment, Plaintiff states that

> Since any contact with an EAP is confidential, it necessarily cannot be imputed to an employer's decision makers and once an employee has sought its assistance, s/he then has the obligation to follow through with further notice to the employer.

*Plaintiff's Brief at 7.* Plaintiff is not arguing, therefore, that his statements to the EAP somehow serve as the required notice to his employer. Indeed, in light of prior opinions, the court would easily reject this argument. The EAP is confidential, and knowledge by an EAP advisor of Plaintiff's illness should not be imputed to the employer. *Vardiman v. Ford Motor Co.*, 981 F.Supp. 1279 (E.D.Mo.1997) [6]

---

**6.** In *Vardiman*, plaintiff was dismissed from his employment after he did not return from medical leave. The court granted summary judgment to the employer on an ADA claim, in large part because the employer simply never knew of the employee's alcoholism problem. Plaintiff argued—just as Rogers does here—that his notification to the EAP representative should be viewed as notification to the employer, because the EAP representative was an agent of the employer. *Id.* 981 F.Supp. at 1283. The court did not say whether the EAP representative could, in

general, be viewed as an agent of the employer. Rather, the court considered that factor unimportant. The question under the ADA is not whether any agent of the company knows about the disability, but whether an agent "who plays any role in decisions affecting employment" knows about the disability. *Id.* In order to prove a violation of the ADA, the plaintiff must show the *"decisionmaker's* knowledge of the plaintiff's protected condition." *Id.* 981 F.Supp. at 1283. Knowledge of an EAP representative—who has

Rather, Plaintiff argues that "the EAP in this case failed in its responsibility to plaintiff and that failure led directly to the situation that caused his termination." *Plaintiff's Brief at 7 (emphasis in brief).* Plaintiff goes on to state that the EAP's failure to satisfy its "initial responsibility to diagnose him . . . merge[s] with the acknowledged likelihood that a health care provider will have to suggest an appropriate accommodation [to] place[ ] liability on the shoulders of the defendant." *Plaintiff's Brief at 7.* Plaintiff sums up that it was "incumbent upon either supervisors to warn plaintiff or the EAP to help him and the combination of these failures by agents of defendant resulted in his termination." *Plaintiff's Brief at 8.*

First, the court must reject this argument as not stating a cognizable claim under the ADA. The alleged negligence of the EAP representative in Rogers' case is in no way cognizable as an ADA violation by itself. *See Vardiman,* 981 F.Supp. at 1283 ("defendant's EAP representative committed no act even remotely cognizable under the ADA"). The ADA is not a statute meant to provide for what would be, in substance, a malpractice action against an employer's EAP. The court sees no basis for this claim in the statute, and none has been pointed out by the Plaintiff.

Second, the court cannot begin to understand how this action of the EAP advisor, even if the advisor were negligent, would act in conjunction with the previous "obviousness" evidence to create liability on the part of CH2M Hill. The statements by Rogers to the EAP are protected as confidential, and Rogers knew this before he made the statements.[7] Notice to the EAP is not notice to the employer. Even stronger, therefore, notice to the EAP does not augment symptoms which might have been noticed by the employer.

Indeed, Plaintiff's attempts to hold CH2M Hill liable because of the actions of the EAP are really nothing more than a defensive mechanism to avoid taking responsibility for his own failure to seek treatment. He argues that he failed to seek assistance because it "is oftentimes difficult for people with mental illnesses to recognize the need for assistance and it is therefore necessary for a professional who has an indication of such a problem to actively impress upon the sufferer the need to seek assistance." *See Affidavit of Gail Ellerbrake.* The evidence is clear, albeit immaterial, however, that the EAP suggested some treatment providers to Plaintiff. The fact that Plaintiff did not take the initiative to call these providers after his contact with the EAP is simply not a reason to hold Defendant liable under the ADA. It is illogical for Plaintiff to argue, as he does on page 3 of his response, that CH2M Hill should be liable because the EAP did not make a greater effort to get him to see a doctor. That is not a basis for an ADA claim, nor is it evidence that supports an ADA claim that his employer should have known of his depression.[8]

no role in decisionmaking, and indeed has a duty to hold in confidence knowledge of the employee's condition—cannot be the basis of an ADA violation. *Id.*

7. The Employee Assistance Program was defined in an employee handbook furnished by the Plaintiff. Plaintiff has not contended that he did not receive this book. This handbook states

The Employee Assistance Program (E.A.P.) is a resource for employees that offers confidential help in solving problems that affect one's personal well-being or job performance. The EAP advisor (your district human resources manager) provides the help needed to clarify problem areas, identify possible solutions, and facilitate referrals to community resources as needed. The program is also designed to help full-time employees and their families get assistance on a confidential and professional basis. This is

true whether the problem is one of mental or emotional illness, life-threatening illness, finances, handicap, alcohol or drug dependency, or marital or family conflict.

8. Indeed, looking to Rogers' own characterization of his exchange with the EAP, it is rather clear that the EAP did nothing wrong:

. . . I did telephone the Employee Assistance Program used by the company on, or about, June 8, 1995. I told the woman I spoke to that I was having difficulty sleeping and concentrating and that I was feeling depressed. She asked one or two questions and indicated the places I could contact, but gave me no encouragement to do so. Neither did she suggest that I see someone for a psychiatric evaluation. My recollection is that the only times I could go would have been during work hours, and I did not want to take time off. Since I had no

### Further Failure of Notice: Reasonable Accommodation.

 Finally, the court should note that even if CH2M Hill had known of Plaintiff's illness (through one mechanism or another), CH2M Hill would still be entitled to summary judgment in this case. It is without dispute that Plaintiff never furnished to the Defendant any notice of what he thought would be a reasonable accommodation. Even if his disability had been obvious, therefore, summary judgment would be required because the reasonable accommodation for that disability was not known, or obvious. Plaintiff cannot escape this requirement because, as noted by the Eleventh Circuit, "[t]he employee retains at all times the burden of persuading the jury either that ... reasonable accommodations were available." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 836 (11th Cir.1998); *Stewart*, 117 F.3d at 1286 ("the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable.").

Plaintiff does not point out in his brief what accommodation he requested. Indeed, Plaintiff seems to admit that the only accommodation which he did request was to be hired back, in effect a second chance. As noted in the motion to dismiss opinion, a 'second chance' would not be a reasonable accommodation. *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir.1995); *see also Brundage v. Hahn*, 57 Cal.App.4th 228, 66 Cal.Rptr.2d 830, 837–38 (1997) ("Reasonable accommodation does not include excusing a failure to control a controllable disability or giving an employee a 'second chance' to control the disability in the future."). Here, Plaintiff might have been able to come up with some other reasonable accommodation. Indeed, the idea of a reasonable accommodation is rather broad under the ADA.[9] In the absence of a timely request; in the absence of a request for a definite period; and in the absence of any evidence that a definite period available to Plaintiff would have cured his problem, the court cannot find that plaintiff has satisfied his burden of requesting a reasonable accommodation, however. *See Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997) (noting that Fourth Circuit had "held that an employer did not violate the ADA by "refusing to grant [an employee] a period of time in which to cure his disabilities" where the employee "sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions"); *but see id.* 120 F.3d at 1226 n. 2 (noting that this bar might not apply where an employer would not allow the employee to take any of his built up leave to remedy his ailment).

In sum, Plaintiff's failure to request any reasonable accommodation entitles Defendant to summary judgment as well. It is one thing to perhaps say that the nature of Plaintiff's disability was obvious. It would be quite another to say that the Defendant should have known of a reasonable accommodation at that point, however. Indeed, in *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir.1997), the Eleventh Circuit rejected the theory that an employer could be liable under the ADA for merely failing to engage in an "interactive process" with the employee. There, the employee's theory was that, merely by demonstration of a disability, she should be able to force the employer to come up with possible reasonable accommodations. *Id.* 108 F.3d at 284–85. The Eleventh Circuit rejected Plaintiff's theory as "punitive"

---

idea that my depression was affecting my work significantly and since she did not encourage me to get an evaluation, I did not do so. In fact, I was quite reluctant to even call in the first place.

**9.** Examples of reasonable accommodations include " 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.' " *Stewart*, 117 F.3d at 1285, quoting from 42 U.S.C. § 12111(9)(B). The term is not meant to include any "maximum accommodation or every conceivable accommodation." *Stewart*, 117 F.3d at 1285. Rather, an employer must only be reasonable in an objective sense, and is not required to endure undue hardship. *Id.*

in nature, and against the basic "remedial" purposes of the ADA. *Id.* 108 F.3d at 285. Here, Rogers would have the court be doubly punitive. Under Plaintiff's theory, the Defendant would be punished with failing to recognize his disability, and punished for failing to figure out how to reasonably accommodate that disability at work. Summary judgment on the basis of Rogers' failure to request a reasonable accommodation is due as well.

### V. CONCLUSION

Placing upon the employer the duties to confront a dilatory employee, to question that employee about whether he or she has a mental illness, and to propose a reasonable accommodation for that employee, would be to stand the ADA on its head. In many respects, the ADA was meant to "combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *See Mundo v. Sanus Health Plan of Greater N.Y.,* 966 F.Supp. 171, 173 (E.D.N.Y.1997). Plaintiff's position in this case, if accepted, would do harm to that principle. All persons who did not perform their job well would be questioned about their mental state. Mental illness would be equated, in effect, with an inability to perform a job. That is the very opposite of the intent of the ADA. *See id.* (The ADA "was not intended to categorize people with common personality traits as disabled.").

In this case, Plaintiff sues his employer under the ADA where he, the employee, failed to notify his employer of his disability, and failed to propose any sort of accommodation, until after he was discharged. Further, Plaintiff even seeks to blame the employer for, in effect, failing to diagnose his mental illness. This is far beyond the pale of a viable ADA claim. The ADA was not designed to mandate job security for the disabled. Its purpose is to prohibit intentional discrimination against a disabled person because of that disability. "The ADA is not a job insurance policy, but rather a congressional scheme for correcting illegitimate inequities the disabled face." *Hedberg,* 47 F.3d at 934. Dennis Wayne

Rogers faced no illegitimate inequities at the hands of CH2M Hill.

Summary judgment is due to be GRANTED.